## REXROAT *v.* STATE OF INDIANA.

[No. 30,418.   Filed October 15, 1964.]

*William C. Erbecker,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General and *David S. Wedding,* Deputy Attorney General, for appellee.

LANDIS, J.—Appellant was charged with first degree burglary, auto banditry and disorderly conduct and after a jury trial was convicted of entering to commit a felony, auto banditry and disorderly conduct. He was sentenced for a term of one to five years for auto banditry and was sentenced to 60 days imprisonment and fined $100.00 for disorderly conduct. Sentence was not imposed for the conviction of entering to commit a felony.

Appellant first claims error upon the alleged misconduct of the deputy prosecuting attorney in saying prior to the trial in the presence of prospective jurors:

" . . . Rexroat wants to cause as much trouble as possible for the State and for the Court, and we resist any continuance."

However, it does not appear that appellant or his counsel made objection at the time to the deputy prosecutor's remarks. It is well settled that a party complaining of error must object thereto and also request the court for action that will remedy the alleged error after it has occurred. *Dull* v. *State* (1962), 242 Ind. 633, 638, 180 N. E. 2d 523, 525. Here it solely appears a co-defendant's attorney asked the court to admonish the jurors and the court there-

upon directed them not to let any remarks influence them in any way. It thus appears the court here completely granted the counsel's request as to admonishment and the court's ruling is therefore not subject to attack on appeal. There is further no motion to discharge the jury appearing in the record, although rules of procedure require an injured party, if he thinks misconduct is of such a character that the damage cannot be repaired by any action of the court, to move to discharge the jury or take such other steps as he may think will secure to him a fair trial. If he fails to do this, and permits the case to proceed to final determination, he must be deemed to have waived all questions arising out of such alleged misconduct. *Coleman* v. *State* (1887), 111 Ind. 563, 567, 13 N. E. 100, 102; *Henning* v. *State* (1886), 106 Ind. 386, 392, 6 N. E. 803, 807.

Appellant has next complained of the alleged insufficiency of the evidence to sustain the verdicts of the jury.

The evidence most favorable to the State is as follows: Witness Clifton Sailor, who lived across from the burglarized Williams home, noticed at about 8:00 p.m. on September 15, 1961, a car containing three men parked east of the entrance to his driveway. After a few minutes two of the men got out of the car and went over to the Williams house. The other man remained in the car, turned it around, and parked it in front of the Williams home. The three occupants of the car were identified as appellant, one Atkinson and one Hockersmith. The witness further stated he saw the two men inside the house getting things out of drawers, which they later carried out to their car. He observed them about seven minutes before the police arrived. After the police arrived and

had told the men to put their hands on top of the car, he observed that appellant and the other two men became boisterous and disrespectful to the officers.

Witness Ruth Sailor, the wife of the previous witness, corroborated her husband's testimony by saying that two men went into Williams' house while the third remained in the car with the motor running. The men inside the house started ransacking the same, and hurriedly putting things in a sheet or bedspread and took them out to the car. She further testified they were running up and down the hall and into the bedrooms.

Clyde Williams, owner of the burglarized house, stated that when he left the house, the doors were closed, and that he didn't know any of the three men and never gave them permission to enter his home

Robert Stierwalt, Jr., a police officer, testified that when he arrived on the scene, two men were carrying out a piece of furniture from the house with the third man standing beside the trunk of the car. The men refused to follow the policeman's instructions to stop and move to the right of the car. It was necessary for the officer to draw his revolver to secure compliance from the men, one of whom was appellant. He further stated the men were belligerent, loud and profane when questioned at the scene by the officers.

One Jessie McIntyre who lived near the Williams home also testified to the belligerent, loud and abusive conduct of appellant when the police arrived.

Appellant has nevertheless contended that in the face of this evidence this cause should be reversed in view of the alleged plausible explanation of appellant that they were merely moving this furniture at the

request of an alleged Don Wright. Appellant's story told to the investigating officers, was that he and the two other men had a conversation with the said Wright in the Frosty Tap Tavern and that Wright told them the burglarized home was his home and that as he was leaving his wife he would pay each man $5.00 if the men would help him remove his personal belongings from the home. Appellant also stated that Wright had been present during the removal of the property from the Williams house, but had fled just prior to the arrival of the police.

However, the above theory advanced by appellant was rendered improbable by the following circumstances, viz: (1) No witness who testified in the cause (appellant did not testify) saw the alleged fourth man, Don Wright, at or about the Williams home, as appellant contends he had been; (2) appellant was extremely hostile and belligerent toward the police officers and refused the officers' commands; (3) appellant failed to explain immediately to the officers the name of the person who had allegedly hired him to remove the articles from the house and did so only in a piece-meal fashion after prodding by one of the officers; (4) articles taken from the Williams home by the men included items not a man's personal belongings, i.e., a lady's watch band, one piggy bank including change, a lady's jewelry box containing jewelry, a woman's small travel bag containing women's clothes; (5) there is evidence the house was ransacked and the men were hurriedly putting things into a sheet and taking them out to the car, and that the motor was kept running; (6) no effort was made by appellant to find the alleged Don Wright although appellant was out on bond for more than four months before trial, the appellant merely stating to the

officer: " . . . I thought you [the officer] was going to find him. . . ."

The logical inference from all the evidence may well have been that the alleged Don Wright was in fact fictitious, and we as a reviewing Court certainly cannot say that the jury was unwarranted by the evidence in coming to such a conclusion by their verdict. As we have many times said, this court will not, on an appeal from a judgment of conviction, examine the record to determine whether the evidence sustains defendant's construction of the evidence in favor of his innocence. It will only consider whether or not the evidence is sufficient for the court or jury as the trier of the facts, to form a basis for its finding of guilty. *Ponos* v. *State* (1962), 243 Ind. 411, 414, 184 N. E. 2d 10, 11. The evidence in this case favorable to appellee with all reasonable inferences supporting it indeed sustains the jury's verdict of guilty.

We have carefully considered the various contentions asserted by appellant on this appeal and find them to be without merit.

Judgment affirmed.

Achor, C.J., and Arterburn and Myers, JJ., concur; Jackson, J., concurs in result.

NOTE.—Reported in 201 N. E. 2d 558.