FOR PUBLICATION

ATTORNEY FOR APPELLANT
: 
ATTORNEYS FOR APPELLEE
:

DALE W. ARNETT JEFFREY A. MODISETT

Winchester, Indiana Attorney General of Indiana

SARAH E. SCHERRER

Deputy Attorney General

Indianapolis, Indiana

IN THE

COURT OF APPEALS OF INDIANA

LORENZO REID, )

)

Appellant-Defendant, )

)

vs. ) No.  89A01-9806-CR-222

)

STATE OF INDIANA, )

)

Appellee-Plaintiff. )

APPEAL FROM THE WAYNE SUPERIOR COURT

The Honorable Robert L. Reinke, Judge

Cause No.  89D02-9112-CF-111

November 17, 1999

OPINION - FOR PUBLICATION

RUCKER, Judge

After a trial by jury, Lorenzo Reid was convicted of murder and attempted robbery for his role in the shooting death of a liquor store owner.  Prior to his own trial, one of Reid's co-defendants was also tried and found guilty of murder.  The State's theory of prosecution was slightly different in both cases.  In this appeal Reid raises three issues for our review which we consolidate and rephrase as:  (1) did the trial court err in allowing the state to present a different theory of the case in his trial than was presented in the trial of a co-defendant, and (2) did the state engage in prosecutorial misconduct.

We affirm.

Facts and Procedural  History

At around 10:30 p.m. on September 21, 1990, Reid and two other males entered a liquor store in Richmond and attempted to rob the owner.  The owner exchanged gunfire with the three men and was shot three times during the encounter.  He later died.  Reid was charged with murder, felony murder, and attempted robbery.  Sometime prior to trial Reid discovered that in addition to introducing evidence that Reid shot the victim and attempted to take the victim's money, the State also intended to introduce evidence through witness Carolyn Webster that Reid drove the getaway car during commission of the crime.  As a result, Reid filed a pleading with the trial court entitled "Motion To Disallow Evidence Contrary To Proven Evidence."  Supp. R. at 35.  Therein Reid argued the State should not be allowed to introduce such evidence because at the trial of a co-defendant, the State had presented evidence and argued vehemently that the co-defendant drove the getaway car.  According to Reid "it would be untenable for the State to be able to argue different sets of facts against co-defendants for the same alleged offense."  Supp. R. at 35-36.  After entertaining Reid's argument, the trial court denied the motion and also denied Reid's request for a continuing objection to alleged inconsistent evidence.  The trial court advised Reid that he would have to raise a specific objection at trial otherwise it would be difficult if not impossible to discern exactly what evidence Reid considered to be contrary or inconsistent.   At trial the State called Carolyn Webster to the stand as Reid anticipated.  Among other things, Webster testified that she knew Reid, that in the late evening hours of September 21, 1990, she was a passenger in a car driven by the co-defendant in question, that they were driving through the area where the liquor store was located, that she heard what sounded like gun shots, saw three men running from the store, one of the men was Reid, that the three jumped into Reid's car, and that Reid was driving.  Reid did not object to Webster's testimony.  Ultimately, the jury convicted Reid as charged.  The trial court vacated the felony murder conviction and sentenced Reid to fifty (50) years for murder and four (4) years for attempted robbery.  The sentences were ordered to run consecutively.  This appeal followed.  Additional facts are set forth below.

Discussion and Decision 

I.

Reid first contends "the State should have been precluded from presenting any evidence from Carolyn Webster or anyone else who would testify that Lorenzo Reid drove the getaway car in the alleged crime, or that [the co-defendant] was in another vehicle."  Brief of Appellant at 10.  This issue is waived because Reid did not object to the testimony at trial.  Reid's pre-trial pleading was in the nature of a motion in limine.  "A motion in limine is used as a protective order against prejudicial questions and statements being asked during trial . . .  A ruling does not determine the ultimate admissibility of the evidence; that determination is made by the trial court in the context of the trial itself."  
Clausen v. State,
 622 N.E.2d 925, 927 (Ind. 1993).  Absent a contemporaneous objection at trial a ruling on a motion in limine does not preserve an issue for appeal.  
Id.
; 
see
 
also
 
Haynes v. State
, 411 N.E.2d 659, 666 (Ind. Ct. App. 1980) (objection to alleged improper testimony must be made at the critical point in the trial when the evidence is offered or when the question is asked).  In this case, Reid's failure to object to Webster's trial testimony waives the issue for review.

Waiver notwithstanding Reid's argument still fails.  Reid's argument involves the doctrine of collateral estoppel.  Generally collateral estoppel operates to bar subsequent relitigation of an issue or fact where that issue or fact was necessarily adjudicated in a former lawsuit and is then presented in a subsequent lawsuit.  
Doe v. Tobias
, 715 N.E.2d 829, 831 (Ind. 1999) (citing 
Sullivan v. American Casualty Co.
, 605 N.E.2d 134, 137 (Ind. 1992)).  Collateral estoppel has been characterized as "offensive" or "defensive" depending on how a party asserts the prior judgment.  The term "offensive" collateral estoppel has been used to characterize a situation where the plaintiff seeks to foreclose the defendant from litigating an issue the defendant had previously litigated unsuccessfully in an action with another party.  
Doe
, 715 N.E.2d at 831.  Similarly, the term "defensive" collateral estoppel has been used to describe those instances where the defendant seeks to prevent a plaintiff from asserting a claim that the plaintiff previously asserted and lost against another defendant.  
Tofany v. NBS Imaging Systems, Inc
., 616 N.E.2d 1034, 1037 (Ind. 1993).  Indiana no longer requires mutuality of estoppel and identity of the parties in either the defensive or offensive use of collateral estoppel in civil cases.  
Tofany
, 616 N.E.2d at 1037; 
Sullivan v. American Casualty Co. of Reading Pa.
, 605 N.E.2d 134, 137 (Ind. 1992).  Hence, because a stranger to a prior litigation may now invoke the doctrine, the use is referred to as "nonmutual collateral estoppel."  In this case, Reid sought to invoke the defensive use of nonmutual collateral estoppel to foreclose the State's introduction of evidence he claims was necessarily adjudicated in another lawsuit, namely: the identity of the getaway driver.

Although more commonly used in civil actions, our courts have invoked collateral estoppel in a variety of contexts in criminal cases.  
See
, 
e.g.
, 
Townsend v. State
, 632 N.E.2d 727, 731 (Ind. 1994) (holding that collateral estoppel barred defendant's retrial for battery when issue of touching in a rude manner had been previously decided adversely to State); 
Hutcherson v. State
, 380 N.E.2d 1219, 1222 (Ind. 1978) (holding that acquittal on one of four counts charging delivery of heroin did not bar conviction on other three counts under doctrine of collateral estoppel where different circumstances and facts surrounded each transaction); 
Segovia v. State
, 666 N.E.2d 105, 108 (Ind. Ct. App. 1996) (holding that principles of collateral estoppel, as distinct from double jeopardy protections, barred defendant's retrial for conspiracy to commit arson following acquittal of felony murder charge); 
Williams v. State
, 406 N.E.2d 263, 264 (Ind. Ct. App. 1980) (holding that conviction of accessory following acquittal of principal as permitted by statute is not precluded on principles of collateral estoppel); 
Snodgrass v. State
, 395 N.E.2d 816, 819 (Ind. Ct. App. 1979) (holding that the driver of vehicle was not a fact conclusively established in defendant's first trial for reckless driving in Johnson County so as to preclude relitigation of issue in defendant's trial for theft of vehicle in Marion County).  However, as with our own state, in the majority of jurisdictions as well as the federal courts, collateral estoppel in the criminal context involves an earlier prosecution of the same defendant by the same sovereign.
(footnote: 1)  As indicated earlier, our supreme court has declared that Indiana no longer requires mutuality of estoppel and identity of the parties in either the offensive or defensive use of collateral estoppel.  In essence, nonmutual collateral estoppel is the law in this jurisdiction, at least in civil cases.  The court has not addressed the defensive use of nonmutual collateral estoppel in the context of criminal litigation.
(footnote: 2)  In that regard we find instructive the rationale of the United States Supreme Court in declining to apply it in those instances:   

[I]n a criminal case, the Government is often without the kind of "full and fair opportunity to litigate" that is a prerequisite of estoppel.  Several aspects of our criminal law make this so: the prosecution's discovery rights in criminal cases are limited both by rules of court and constitutional privileges; it is prohibited from being granted a directed verdict or from obtaining a judgment notwithstanding the verdict no matter how clear the evidence in support of guilt [cit. omitted]; it cannot secure a new trial on the ground that an acquittal was plainly contrary to the weight of the evidence [cit. omitted]; and it cannot secure appellate review where a defendant has been acquitted. [cit. omitted] . . . .

The application of nonmutual estoppel in criminal cases is also complicated by the existence of rules of evidence and exclusion unique to our criminal law. It is frequently true in criminal cases that evidence inadmissible against one defendant is admissible against another.  The exclusionary rule, for example, may bar the Government from introducing evidence against one defendant because that evidence was obtained in violation of his constitutional rights. And the suppression of that evidence may result in an acquittal. [cit. omitted].  The same evidence, however, may be admissible against other parties to the crime "whose rights were [not] violated." [cit. omitted].  In such circumstances, where evidentiary rules prevent the Government from presenting all its proof in the first case, application of nonmutual estoppel would be plainly unwarranted.

Standefer
, 447 U.S. at 22-24, 100 S. Ct. at 2007-2008.  The same considerations expressed in 
Standefer
 are equally applicable to prosecutions in this state.  We hold therefore that nonmutual collateral estoppel has no applicability in criminal cases.  The invocation of collateral estoppel in that context requires mutuality of estoppel and identity of the parties.

However, even assuming nonmutual collateral estoppel were applicable in criminal cases in this jurisdiction, Reid has not demonstrated he is entitled to its use.  The trial court's decision to disallow the defensive use of collateral estoppel will be reversed only upon an abuse of discretion.  
Wilcox v. State
, 664 N.E.2d 379, 381 (Ind. Ct. App. 1996).  The prime consideration is whether the party against whom the prior judgment is pled had a full and fair opportunity to litigate the issue and whether it would otherwise be unfair under the circumstances to permit the use of collateral estoppel.  
Sullivan
, 605 N.E.2d at 138.  The burden is upon the party asserting collateral estoppel to show he is entitled to its use. 

The underlying premise for the defensive use of collateral estoppel is that the plaintiff  asserted a claim in a previous litigation against another defendant and lost.  
Slutsky v. Crews
, 713 N.E.2d 288, 291 (Ind. Ct. App. 1999); 
see
 
also
 
Hayworth v. Schilli Leasing, Inc.
, 669 N.E.2d 165, 167 n.3 (Ind. 1996) (Defensive collateral estoppel "forecloses plaintiff from asserting claim that plaintiff had previously litigated and lost against another defendant."); 
Tofany
, 616 N.E.2d at 1037 ("[W]hen the defendant seeks to prevent a plaintiff from asserting a claim which the plaintiff had previously litigated and lost against another defendant, the use has been termed 'defensive' collateral estoppel.").  Here, the State prosecuted Reid's co-defendant and was successful.  Thus, the claim which Reid sought to foreclose in the instant case, namely, evidence concerning the identity of the driver of the getaway car, was not a claim the State previously litigated and lost.  Essentially, the defensive use of collateral estoppel does not apply to the facts of this case. 

Further, in order to apply the doctrine of collateral estoppel, the court must engage in a two-step analysis.  We must first determine what the first judgment decided, and then  examine how that determination bears on the second case.  
Segovia
, 666 N.E.2d at 107.  Determining what the first judgment decided involves an examination of the record of the prior proceedings including the pleadings, evidence, charge and any other relevant matters.  
Id.
  The court must then decide whether a reasonable jury could have based its verdict upon any factor other than the factor of which the defendant seeks to foreclose consideration.  
Id.
  If the jury could have based its decision on another factor, then collateral estoppel does not bar relitigation.  
Id.
 

In this case, the only portion of the record from the co-defendant's trial that Reid provided the trial court and hence this court is a seven-page excerpt from the State's closing remarks.  Thus, even assuming collateral estoppel would otherwise apply in this instance, Reid has failed to provide a record from which we can determine what evidence was presented at the co-defendant's trial, and whether the jury in that case could have based its verdict on any factor other than the co-defendant's involvement as the getaway driver.  Indiana Appellate Rule 7.2 places the burden on the appellant to present a record that is complete with respect to the issues raised on appeal, and this burden includes a duty to ensure that the court has a transcript of the appropriate trial proceedings.  
Reed v. State
, 702 N.E.2d 685, 689 (Ind. 1998).  Accordingly, Reid has not shown that the trial court abused its discretion in failing to allow him to invoke the use of collateral estoppel. 

II.

Reid next complains the State engaged in prosecutorial misconduct by:  (1) interviewing a defense witness shortly before the witness was scheduled to testify and in offering to compensate the witness for time he would miss from work, and (2) recording the witness' statement and not disclosing that fact to the defendant in violation of local rules of  discovery. 

The facts are these.  Wayne Willis was listed as a defense witness and had been interviewed several times by the State as well as the defense.  After being subpoenaed by the defense to testify at trial, Willis contacted the prosecutor's office expressing concern over missing time from his employment.  In the evening hours of the second day of trial, the Wayne County prosecutor went to Willis' home, and met with Willis, his wife, and son.  The Prosecutor delivered a letter to Willis setting forth the State's agreement to make sure he did not suffer any loss of income from his employment due to his obligation to appear in court.  The conversation with Willis was recorded.  The following day, prior to Willis' scheduled trial appearance, the State advised Reid of the conversation as well as the offer to compensate Willis for loss of employment income.  Although the timing of the disclosure is unclear, at some point Reid was also advised the conversation was recorded.  At trial, Reid called Willis to the stand and questioned him at length concerning the events of September 21, 1990, the day of the murder, including a statement Willis had given the police shortly after the crime occurred.  The State then cross-examined the witness.  On re-direct examination the following relevant colloquy took place:

Q. Mr. Willis, have I gone over this statement with you?

A. No.

Q. Has anybody gone over this statement with you in the last two or three days?

A. Yes.

Q. And who was that?

A. Mr. O'Maley.

Q. Who's Mr. O'Maley?

A. The Prosecutor, Attorney.

Q. Where did he go?

A. Where did he go?

Q. To go over this statement with you?

A. Oh, he came to my house yesterday.

Q. Oh, he did.  Did Mr. O'Maley offer you anything of value?

A. No.  He said tell the truth.

Q. What about your pay?

A. For?

Q. For work.

A. Yeah, he - I told him where I work they won't compensate for being off for being called for stuff like this and he said it's only fair to - he - they normally don't do it but this is a big case and that they would compensate - you know, try to get compensation and make up for my time and lost wages.

R. at 1575-76.  Reid did not move to strike any portion of the witness' testimony and did not move for mistrial based on alleged prosecutorial misconduct.  In fact, Reid posed no objection to the witness' testimony at all.  Rather, after the jury returned a verdict of guilty, Reid filed several post trial motions, including a motion to set aside the jury's verdict, a motion for appointment of a special prosecutor, and a motion to correct errors.  Among other things each of the motions raised alleged prosecutorial misconduct in "bribing" a witness.  Ultimately the trial court denied the motions.

When we review claims of prosecutorial misconduct, we consider first whether the prosecutor committed misconduct and second, whether the alleged misconduct placed the defendant in grave peril.  
Robinson v. State
, 693 N.E.2d 548, 551 (Ind. 1998).  "The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, rather than the degree of the impropriety of the conduct."  
Id.
  Here, Reid contends that after the Prosecutor interviewed Willis and agreed to compensate him for the time he would miss from work, Willis' testimony at trial varied substantially from his pre-trial statements. 

Faced with alleged prosecutorial misconduct a defendant is required to object and request an admonishment.  
See
 
Brown v. State
, 572 N.E.2d 496, 498 (Ind. 1991).  If, after an admonishment, the defendant is still not satisfied, the proper procedure is to move for mistrial.  
Id.
  The failure to request an admonishment or move for mistrial results in waiver of the issue.  
Id.
  Alternatively, if the defendant thinks the misconduct is of such a character that the damage cannot be repaired by any action of the court, then the defendant must move to discharge the jury or take such other steps as he may think will secure him a fair trial.  
Rexroat  v. State
, 245 Ind. 688, 690, 201 N.E.2d 558, 559 (1964).  If the defendant fails to take any steps whatever and allows the case to proceed to final determination, then he waives  all questions arising out of the alleged misconduct.  
Id.
  In this case, Reid raised no objection to the alleged prosecutorial misconduct until after the jury reached its verdict of guilty.  This issue is now waived for appellate review.

Waiver notwithstanding we address Reid's claim on the merits.  The thrust of Reid's complaint is that in several pretrial statements Willis told police that he was in the presence of three men who fit the description of the liquor store murderers.  According to Reid the time frame in which this activity occurred meant that Reid could not have been one of the three men.  Reid argues that after the prosecutor offered to compensate Willis for his loss of employment income, Willis changed his testimony concerning the time frame.  Reid's argument is unavailing.  First, in Willis' pre-trial statements the time frame in question ranged from between 8:30 p.m. and 10:30 p.m.  In his trial testimony, the time frame ranged from between 8:30 p.m. and 11:00 pm.  They are not materially different.  More importantly,  in a hearing conducted nearly two weeks before trial, Willis testified about the time frame and gave the same testimony that he later gave at trial.  Indeed at the pre-trial hearing Reid cross-examined Willis on this point attempting to show that his statements, given shortly after the crime occurred, more accurately reflected the true account of events, as opposed to his pre-trial hearing testimony occurring some three years after the fact.  Thus, assuming for the sake of argument only that the prosecutor engaged in misconduct by compensating Willis for the time he missed from work, Reid has not shown that this conduct placed him in grave peril. 

Equally unavailing is the notion that Reid was placed in grave peril by the prosecutor's failure to produce Willis' recorded statement.  The record shows that the State resisted producing the statement claiming work product privilege.  In response to Reid's various post-trial motions, the trial court ordered the State to produce the tape recorded statement for an 
in camera
 review.  After review the trial court rejected the State's claim and ordered the State to turn the recorded statement over to Reid.  Apparently the State complied.  We say "apparently" because although the record is silent on this point, Reid does not contend the State failed to comply with the trial court's order.  In this appeal Reid argues he was denied a fair trial by the State's failure to disclose the tape because he was not allowed time to prepare for Willis' trial testimony. 

It is true that pretrial discovery is designed to promote justice and to prevent unfair surprise by allowing the defense adequate time to prepare its case.  
Phillips v. State
, 550 N.E.2d 1290, 1299 (Ind. 1990).  It is also true that a willful or deliberate violation of a discovery order may not only impair the lawyer's ability to prepare for trial, but may also substantially impair her ability to counsel her client properly, which may be regarded as a violation of the accused's right to counsel.  
Long v. State
, 431 N.E.2d 875, 877 (Ind. Ct. App.  1982).  In this case however, Reid has not demonstrated how his ability to prepare for trial was impaired by the State's failure to produce the recorded statement.  Indeed, he has not even included the statement as part of the record on appeal.  In any event as we have already indicated, Reid knew well in advance of trial that Willis' trial testimony would not be exactly the same as the pre-trial statements Willis had given the police.  Reid had ample opportunity to explore this matter.  He was not denied the opportunity to prepare adequately for trial.

Judgment affirmed. 

STATON, J., and NAJAM, J., concur.

FOOTNOTES
1: 
 
See
, 
e.g.
, 
Standefer v. United States
, 447 U.S. 10, 24, 100 S. Ct. 1999, 2008, 64 L. Ed. 2d 689 (1980) (holding that nonmutual collateral estoppel was not applicable in criminal context so as to preclude prosecution of an aider and abettor where a jury had already acquitted the principal); 
Ashe v. Swenson
, 397 U.S. 436, 446-47, 90 S. Ct. 1189, 1196, 25 L. Ed. 2d 469 (1970) (holding that collateral estoppel barred the State from relitigating an issue in a second prosecution against the same defendant); 
United States v. Lahey
, 55 F.3d 1289, 1296 (7th Cir. 1995) (citing 
Standefer
 in holding that defendant's guilty verdict was not barred under collateral estoppel where co-defendant had been acquitted); 
United States v. O'Hara
, 960 F.2d 11, 14 (2nd Cir. 1992) (holding that the bar to nonmutual collateral estoppel in criminal cases applies whether the first judgment was by directed or jury verdict); and similar holdings in 
Kott v. State
, 678 P.2d 386, 393 (Alaska 1984); 
State v. Edwards
, 136  Ariz. 177, 188, 665 P.2d 59, 70 (Ariz. 1983); 
State v. Allee
, 740 P.2d 1, 10 (Co. 1987); 
People v. Franklin
, 167 Ill. 2d 1, 13, 656 N.E.2d 750, 755 (Ill. 1995); 
Potts v. State
, 430 So. 2d 900, 903 (Fla. 1982); 
Commonwealth v. Cerveny
, 387 Mass. 280, 285, 439 N.E.2d 754, 757 (Mass. 1982); 
State v. Dean
, 246 Neb. 869, 877, 523 N.W.2d 681, 690 (Neb. 1994) (overruled on other grounds); 
People v. Berkowitz
, 50 N.Y.2d 333, 343, 428 N.Y.S.2d 927, 933, 406 N.E.2d 783, 789 (N.Y. 1980); 
State v. Brooks
, 337 N.C. 132, 147, 446 S.E.2d 579, 589 (N.C. 1994).

2:  Another panel of this court has recently approved the defensive use of nonmutual collateral estoppel in a criminal case.  
See
 
Jennings v. State
, 714 N.E.2d 730 (Ind. Ct. App. 1999), 
trans. denied
.