Anthony Edward RODRIGUEZ, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A03–0211–CR–393.

Court of Appeals of Indiana.

Aug. 28, 2003.

Transfer Denied Oct. 22, 2003.

Marce Gonzalez, Jr., Merrillville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Andrew A. Kobe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Anthony Edward Rodriguez appeals his convictions for Rape,[1] a class A felony and Criminal Confinement,[2] a class B felony. Specifically, Rodriguez maintains that the enhancement of both offenses by the same element—use of a deadly weapon—violates double jeopardy prohibitions under the Indiana Constitution and that two instances of prosecutorial misconduct denied him the right to a fair trial and constituted reversible error. Concluding that there was no double jeopardy violation and that the admonishment the trial judge administered to the jury sufficiently cured any prejudice that may have flowed from the alleged misconduct, we affirm.

### FACTS

On September 2, 2001, B.C. and several of her friends walked to a service station in Hammond that was across from her mobile home park. At some point, three men in a vehicle that Rodriguez was driving, approached B.C. and the others and asked if they wanted to attend a party in a nearby town. When B.C. declined the offer, one of the men pointed a .12–gauge shotgun at the group. Others proceeded to rob the group of various items including jewelry and a wallet. Thereafter, one of the suspects ordered B.C. into the vehicle. One of the men began to fondle B.C.'s vagina while another forced B.C. to perform oral sex upon him. Rodriguez then drove the group to a wooded area where, at some point, one of the men pulled down B.C.'s pants and raped her. B.C. was then forced onto the trunk of the car where she was raped and ordered to perform oral sex on one of the others. B.C. was also forced to fondle Rodriguez's penis and all three men then subsequently took turns having sexual intercourse with B.C.

1. Ind.Code § 35–42–4–1.

2. I.C. § 35–42–3–3.

Eventually, Rodriguez drove B.C. back to the gas station where she was again forced to perform oral sex on one of the men. Shortly thereafter, the men fled the scene and the police arrived. B.C. reported that the three men had raped her. A physical examination was performed, where it was determined that Rodriguez could not be excluded as a contributor of the seminal material found on B.C.'s underwear and genital swabs.

Rodriguez eventually surrendered and admitted to police officers that he had sexual contact with B.C. He also informed the police that he had possessed a necklace that had been taken in the robbery.

As a result of the incident, Rodriguez was charged with rape, criminal deviate conduct, confinement and four counts of robbery. At the conclusion of Rodriguez's jury trial, the deputy prosecutor displayed a .12–gauge shotgun to the jury during closing argument. No weapon had been admitted into evidence during the trial. Rodriguez objected to the prosecutor's conduct and moved for a mistrial, claiming that showing the weapon to the jury when it had not been admitted into evidence constituted prosecutorial misconduct and was highly prejudicial to him. In response, the trial judge admonished the jurors not to "use" the gun when deliberating because it had not been admitted into evidence and denied the motion for mistrial. Tr. p. 850. The prosecutor also made the following statement during closing argument to which Rodriguez did not object:

> [B.C.] made a decision to live. She did what she was told by these three men because she had to. Had she run out in this wooded area where she didn't even know where she was, maybe she would have been shot in the back like she thought. There's no requirement that she says [sic] no. And, frankly, to punish [B.C.] because she didn't say no,

that's frightening to all the rest of us. Ladies and gentlemen, when my daughter is her age, I would want her to do the same thing because she'd be alive.

Tr. p. 841–42. Rodriguez was ultimately found guilty as charged and he now appeals.

## DISCUSSION AND DECISION

### I. Double Jeopardy Claim

■ Rodriguez first claims that his convictions for class A felony rape and class B felony confinement violate Indiana's prohibition against double jeopardy. Specifically, Rodriguez maintains that it was error to use the same element—the shotgun—to elevate the class of felony on each of these counts.

Turning first to the charging informations, the State alleged that:

> On or about September 2, 2001, in the county of Lake, State of Indiana, ANTHONY EDWARD RODRIGUEZ did knowingly or intentionally have sexual intercourse with [B.C.] while armed with a shotgun, a deadly weapon and by using or threatening the use of deadly force on [B.C.].

> On or about September 2, 2001, in the County of Lake, State of Indiana, ANTHONY EDWARD RODRIGUEZ did knowingly or intentionally confine [B.C.] without her consent while armed with a shotgun, a deadly weapon.

Appellant's App. pp. 15–16. Because the State alleged that Rodriguez raped B.C. while armed with a deadly weapon or threatened or used force, he could be charged with a class A felony rather than a class B felony. *See* I.C. § 35–42–4–1. Likewise, inasmuch as it was alleged that Rodriguez committed the confinement with the shotgun, that offense could be charged under Indiana Code section 35–42–3–3 as a

class B felony rather than as a class D felony.

▬ In addressing Rodriguez's double jeopardy contention, we note that under the actual evidence rule set forth in *Richardson v. State,* 717 N.E.2d 32 (Ind. 1999), two or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, "if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Miller v. State,* 790 N.E.2d 437, 439 (Ind.2003) (quoting *Richardson,* 717 N.E.2d at 49). However, in interpreting *Richardson,* our supreme court later held that the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense. *Bald v. State,* 766 N.E.2d 1170, 1172 (Ind. 2002). Thus, a defendant's use of the same weapon in the commission of separate and distinct offenses does not violate the Indiana Double Jeopardy Clause, so long as each conviction is supported by proof of at least one unique evidentiary fact not required for any other conviction. *Miller,* 790 N.E.2d at 437. *Miller* went on to acknowledge that the repeated use of a weapon to commit multiple separate crimes is not "the very same behavior" precluding its use to separately enhance the resulting convictions. *Id.* at 439. Rather, the use of a "single deadly weapon during the commission of separate offenses may enhance the level of each offense." *Id.* (quoting *Gates v. State,* 759 N.E.2d 631, 633 n. 2 (Ind.2001)).

Here, it was alleged in the charging information and established by the State at trial that Rodriguez used a shotgun in committing both offenses. The proof establishing each of the crimes of rape and confinement were supported by unique evidentiary facts that were not required to prove the other. In essence, Rodriguez's repeated use of the shotgun to commit each offense did not preclude the separate enhancement of both counts. Therefore, in accordance with *Miller,* enhancing the levels of both convictions did not violate double jeopardy principles.

## II. Prosecutorial Misconduct

▬ Rodriguez next claims that he was prejudiced and is entitled to a new trial because of prosecutorial misconduct. Specifically, Rodriguez argues that the prosecutor's act of displaying a shotgun that had not been admitted into evidence to the jury during closing argument was improper and that a mistrial should have been granted. Rodriguez also urges that the prosecutor committed misconduct when she remarked during closing argument that she would want her own daughter to react the way B.C. did if her daughter had been the victim of these crimes. Thus, Rodriguez argues for the first time on appeal that he was entitled to a mistrial because the prosecutor improperly interjected her personal feelings into the proceedings. Appellant's Br. p. 14.

▬ In resolving this issue, we note that a claim of prosecutorial misconduct requires a determination that the misconduct had a probable persuasive effect on the jury's decision. *Overstreet v. State,* 783 N.E.2d 1140, 1154 (Ind.2003). When we review a properly preserved claim of prosecutorial misconduct, we first determine whether the prosecutor engaged in misconduct and then consider whether, under all of the circumstances, the prosecutor's misconduct placed the defendant in a position of grave peril to which he should not have been subjected. *Hancock v. State,* 737 N.E.2d 791, 797 (Ind.Ct.App.

2000). This inquiry depends upon an analysis of the probable persuasive effect any misconduct had on the jury's decision, and whether the alleged misconduct was repeated such that it appears that the prosecutor engaged in a deliberate attempt to improperly prejudice the defendant. *Id.*

We also note that a mistrial is an extreme remedy that is warranted only when less severe sanctions will not satisfactorily correct the error. *Banks v. State,* 761 N.E.2d 403, 405 (Ind.2002). The decision to grant or deny a motion for a mistrial is within the trial court's discretion. *Pierce v. State,* 761 N.E.2d 821, 825 (Ind.2002).

In this case, the trial court immediately sustained Rodriguez's objection and admonished the jury when the prosecutor displayed the shotgun during closing argument. Tr. p. 850. The record shows that even though the shotgun had not been admitted into evidence, a number of witnesses described the weapon used in the commission of the offenses as a pump shotgun. Tr. p. 84, 182, 723. Rodriguez also admitted in his statement to the police that a loaded shotgun had been used to commit the rape and robbery. In light of this evidence, coupled with the trial court's admonishment to the jury, we find that the probable persuasive effect of the prosecutor's display of the weapon was *de minimis. See Chubb v. State,* 640 N.E.2d 44, 49 (Ind.1994). Thus, it cannot be said that the prosecutor's conduct in this instance had a persuasive effect on the jury, and we conclude that the trial court did not err in denying Rodriguez's motion for a mistrial.

As to Rodriguez's second claim of prosecutorial misconduct, we note that defense counsel failed to object to the alleged personal comment that the prosecutor made during the closing argument. Generally, when faced with alleged prosecutorial misconduct, a defendant is required to object and request an admonishment. *Reid v. State,* 719 N.E.2d 451, 458 (Ind.Ct.App.1999). Otherwise, the issue is waived. *Id.* Here, however, Rodriguez attempts to avoid waiver by arguing that the prosecutor's comments amounted to fundamental error. In some instances, prosecutorial misconduct may amount to fundamental error, but the prosecutor's conduct must have subjected the defendant to grave peril and had a probable persuasive effect on the jury's decision. *Id.* The gravity of the peril turns on the probable persuasive effect of the misconduct on the jury's decision and not on the degree of impropriety of the conduct. *Id.*

In this case, the prosecutor's comment to the jury regarding the manner in which she would expect her own daughter to react if she had been the victim in this case was an isolated incident. Moreover, the purpose of making such a comment was designed to counter Rodriguez's defense at trial that B.C. had "consented" to the attack. Tr. p. 841–42. Contrary to Rodriguez's contention, he has made no showing that the prosecutor was attempting to inflame the passions of the jury and focus upon something other than his guilt. Therefore, Rodriguez has failed to show that the comment improperly prejudiced him or subjected him to grave peril. As a result, his claim of fundamental error must fail.

Judgment affirmed.

SHARPNACK, J., concurs.

BROOK, J., concurs with opinion.

BROOK, Chief Judge, concurring.

I fully concur in the majority's opinion, but I write separately to condemn the tactics of the prosecutor in this case. Although the instances cited by Rodriguez did not rise to the level of misconduct or

fundamental error, they do evidence a troubling disregard for the Rules of Professional Conduct and a ruthless desire to win at any cost, neither of which has a place in our criminal justice system.

As a lawyer, a prosecutor is expected to "act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." Ind. Professional Conduct Rule 1.3 cmt. As a lawyer representing the State of Indiana, however, a prosecutor has the special "responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence." Ind. Professional Conduct Rule 3.8 cmt.

As Justice Sutherland explained under analogous circumstances,

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from im-

proper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

*Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), *overruled on other grounds, Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).[3]

By brandishing the shotgun and offering her personal opinion during closing argument, the prosecutor improperly exploited the jury's sympathy and emotions. I agree with my colleagues that these actions did not constitute reversible error, but I feel compelled to advise both sides of the criminal bar that our decision should not be interpreted as giving a "green light" to similar conduct in future cases. A prosecutor who repeatedly attempts to win cases based on anything other than the evidence adduced at trial will eventually lose cases for the State on appeal, as well as the trust of both the judiciary and the public.

---

**3.** I recognize that as appointed officials, federal district attorneys are largely insulated from the political pressures faced by elected prosecuting attorneys and their deputies at the local level. Nevertheless, I believe that elected prosecutors cannot cite these political pressures as a justification for securing convictions at any cost; given that the voting public has entrusted them with the awesome responsibility of deciding whether to file criminal charges against their fellow citizens, they must be equally mindful of their "duty to refrain from improper methods calculated to produce a wrongful conviction." I also recognize that a prosecutor must be passionate to be an effective advocate, but this passion cannot take the form of grandstanding or injecting personal opinion into a case.