Christopher J. **STEPHENS,**
Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 20A05–0702–CR–95.

Court of Appeals of Indiana.

Oct. 17, 2007.

Transfer Denied Dec. 13, 2007.

Nancy McCaslin, McCaslin & McCaslin, Elkhart, IN, Attorney for Appellant.

Steve R. Carter, Attorney General of Indiana, Joby D. Jerrells, Special Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Christopher Stephens appeals his conviction for Class C felony nonsupport of a dependent.[1] We affirm.

### Issues

Stephens raises several issues on appeal, which we restate as follows:

I. whether the trial court properly prohibited Stephens from collater-

---

1. Christopher Stephens and his father, Michael Stephens, have filed a civil lawsuit in the United States District Court for the Southern District of Indiana naming all the members of the Indiana Court of Appeals as defendants. Because the lawsuit names "all members," it would be impossible to resolve this present appeal if all the judges of this court recused themselves. Therefore, the "rule of necessity" mandates that we address this appeal because there is no one else to do it. *Brown v. State,* 684 N.E.2d 529, 534 (Ind. Ct.App.1997), *trans. denied.*

ally attacking the child support order entered by another court in a prior proceeding;

II. whether the trial court properly denied Stephens's *Batson* challenge;

III. whether the trial court properly rejected Stephens's affirmative defense of inability to pay; and

IV. whether there was sufficient evidence to enhance the conviction to Class C felony nonsupport.

### Facts

On January 19, 2003, C.S. was born to Christopher Stephens and Jessica Sluss. The couple did not marry, but they took part in a juvenile paternity action in Elkhart County. On March 2, 2004, the Elkhart Superior Court entered a temporary support order of $64.00 per week. Sluss petitioned for a modification of support, and she and Stephens appeared at a September 21, 2004 hearing. Stephens attended this hearing without counsel. Stephens did not present documented evidence of his weekly or yearly wages at the hearing, despite the court's repeated requests for this information. Instead, he presented some paperwork that apparently reflected an income of $1375.77 a week. Stephens, a truck driver, told the trial court that his weekly gross pay was about $1,300, but that about $850 came out of that amount for fuel costs. The trial court increased his weekly support payments to $263.26 based an aver-age weekly wage of $1375.77 and made the increase retroactive to March 2, 2004. In doing so, the trial court explicitly instructed Stephens to produce documentation of his wages and business expenses. The trial court explained to Stephens that until additional documentation was produced, the court would continue to assume his weekly gross income was $1375.77 and that the burden was on Stephens to presented additional financial data otherwise. Specifically, the trial court stated:

> Well, then, I guess we're going to say your income is $1375.77 a week until you produce evidence otherwise that puts the burden on you to get your financial data and your financial records into order. See an accountant. See somebody but it's not unreasonable to say, okay, come to Court, 'This is my income and this is proof.'

Tr. Sept. 21, 2004 p. 10.

Following this hearing, Stephens did not successfully petition to modify the order, move to correct error, or file a sufficient appeal, and the order was not changed.[2]

Stephens did not regularly make these child support payments and Sluss filed a verified showing of non-compliance.[3] Stephens did not appear at the hearing on December 7, 2004. The trial court found Stephens in contempt and issued a warrant for his arrest.

On January 11, 2006, the State charged Stephens with Class D felony nonsupport

---

**2.** Stephens unsuccessfully attempted to file a pro se appeal. He filed a Notice of Appeal with the trial court on December 27, 2004. The Notice of Completion of Clerk's Record and Transcript was filed on July 25, 2005. Stephens filed the Appellant's Case Summary on August 9, 2005. Indiana Appellate Rule 45(B) mandates that the appellant's brief be filed no later than thirty days after the clerk issues its notice of completion. Ind.App. R. 45(B)(1). Stephens did not file a brief and nothing further was filed in the matter. If the appellant's brief is not filed within the requisite time, the appeal can be summarily dismissed. Ind.App. R. 45(D). This court dismissed the appeal on November 30, 2005.

**3.** Neither party provided this court with a Chronological Case Summary for the child support action.

of a dependent for the period between July 1, 2005, and November 30, 2005, and with a Class C felony for nonsupport in excess of $15,000. He was arrested in Georgia and transported to Indiana for trial. Following a motion in limine by the State, the trial court held that Stephens could not collaterally attack the September 21, 2004 support order. A jury found Stephens guilty of Class D felony nonsupport of a dependent. The trial court heard the enhancement portion of the trial and found Stephens guilty of Class C felony nonsupport because the total amount due was over $15,000. This appeal followed.

## Analysis

### I. Collateral Estoppel

■ In this case, the trial court held that Stephens was collaterally estopped from arguing the validity of the child support court's September 21, 2004 order. Stephens contends that order was in error and miscalculated the amount of support due. Stephens also argues that his right to counsel was violated at the September 21, 2004 child support hearing.

■ Collateral estoppel bars subsequent relitigation of an issue or fact where that issue or fact was adjudicated in a former proceeding. *Reid v. State,* 719 N.E.2d 451, 454 (Ind.Ct.App.1999) *cert. denied* 531 U.S. 995, 121 S.Ct. 489, 148 L.Ed.2d 461 (2000). The use of collateral estoppel can be offensive or defensive. An instance where a defendant seeks to prevent the State from introducing a claim previously asserted by the State against another that lost is a defensive use of collateral estoppel. *Id.* As described in

the civil context, offensive collateral estoppel is when a plaintiff seeks to prevent a defendant from litigating an issue the defendant has already litigated unsuccessfully. *Id.* In the civil context, Indiana does not require mutuality and identity of the parties for use of collateral estoppel, so a stranger to the litigation could invoke collateral estoppel.[4] *Id.* In *Reid,* another panel of this court held that mutuality of estoppel and identity of the parties is required for a defendant to assert defensive collateral estoppel against the State in the criminal context. *Id.* at 456. The court in *Reid* based its decision on a case in which the United States Supreme Court stated:

[I]n a criminal case, the Government is often without the kind of "full and fair opportunity to litigate" that is a prerequisite of estoppel. Several aspects of our criminal law make this so: the prosecution's discovery rights in criminal cases are limited both by rules of court and constitutional privileges; it is prohibited from being granted a directed verdict or from obtaining a judgment notwithstanding the verdict no matter how clear the evidence in support of guilt; it cannot secure a new trial on the ground that an acquittal was plainly contrary to the weight of the evidence; and it cannot secure appellate review where a defendant has been acquitted.

\* \* \* \* \* \*

The application of nonmutual estoppel in criminal cases is also complicated by the existence of rules of evidence and exclusion unique to our criminal law. It is frequently true in criminal cases that

---

4. "Mutuality refers to the requirement that one taking advantage of the prior adjudication would have been bound had the prior judgment gone the other way." *Sullivan v. American Cas. Co. of Reading, Pa.,* 605 N.E.2d 134, 137 (Ind.Ct.App.1992). Identity of the parties means that "the party to be bound by a prior adjudication must be the same or in privity with the party in the prior action." *Id.* "Thus, in Indiana, a stranger to the judgment, one who is neither a party nor in privity with a party to the prior judgment, has not been permitted to take advantage of collateral estoppel in a subsequent action." *Id.*

evidence inadmissible against one defendant is admissible against another. The exclusionary rule, for example, may bar the Government from introducing evidence against one defendant because that evidence was obtained in violation of his constitutional rights. And the suppression of that evidence may result in an acquittal. The same evidence, however, may be admissible against other parties to the crime "whose rights were [not] violated." In such circumstances, where evidentiary rules prevent the Government from presenting all its proof in the first case, application of nonmutual estoppel would be plainly unwarranted.

*Standefer,* 447 U.S. 10, 22–24, 100 S.Ct. 1999, 2007–08, 64 L.Ed.2d 689 (1980) (internal citations omitted).

The analysis in *Standefer* and the factual scenario in *Reid* presented a defensive use of collateral estoppel, an attempt by a criminal defendant to prevent the prosecution from litigating certain charges because of outcomes in past cases involving another defendant. Here, the State invoked offensive collateral estoppel to prevent Stephens from attacking the judgment of a prior proceeding in which he was a party. We find that the facts here are distinguishable and we should not be limited by the holding in *Reid.* We also hold that strict mutuality and identity of parties is not required here. As pointed out by the State, to allow otherwise would open the door to all defendants in nonsupport actions to undermine and challenge the

decision of the underlying child support orders. Those underlying orders must be challenged properly in the child support proceedings or by direct appeal from the proceedings and not relitigated at the criminal trial.

■ Additionally, a prime consideration in the use of collateral estoppel is "whether the party against whom the prior judgment is asserted had a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel." *Reid,* 719 N.E.2d at 456. Stephens argues he did not have a full and fair opportunity to litigate the child support amount because he was not represented by counsel at the September 21, 2004 hearing. At his criminal trial, Stephens wanted to raise the fact that he was not advised of his right to counsel or appointed counsel at the September 21, 2004 hearing.[5] Stephens also wanted to challenge the assigned increased support amount of $263 per week. He argues that because the order does not take into account his self-employment expenses it included too high a rate of support and needed to be challenged in an effort to defend the State's charges of nonsupport. The trial court ruled that Stephens was collaterally estopped from raising these issues at his criminal trial, reasoning that Stephens either needed to appeal the specific issues he contended were problematic, file a petition to modify support, or file a

---

5. Although Stephens was not represented by counsel during the September 21, 2004 hearing, he had been represented at previous hearings until the relationship with his attorney apparently broke down. We acknowledge that Indiana law mandates that a person may not be incarcerated without first being advised of his or her right to counsel, but Stephens was not facing incarceration at the September 21, 2004 hearing. *See Marks v.*

*Tolliver,* 839 N.E.2d 703, 706 (Ind.Ct.App. 2005). Stephens was not held in contempt until a December 6, 2004 hearing, which he did not attend. He argues, however, that the court should have advised him of his right to counsel and offered to appoint counsel at the earlier hearing. We disagree. Stephens was not facing incarceration at that time and had previously hired counsel.

motion to correct error in order for the support to be modified by the child support court. We agree. This decision was not against the logic and effect of the facts and circumstances before the trial court.

 Put simply, Stephens did not successfully appeal any aspect of the juvenile paternity and child support proceedings. He may not now reincarnate the issues that were adjudicated in that proceeding. *Hunter v. State*, 802 N.E.2d 480, 485 n. 8 (Ind.Ct.App.2004) (reasoning that in a later criminal trial defendant "may not now collaterally attack the validity of the contempt sanction in this separate and distinct criminal action."). The September 21, 2004 support order was a final order on the merits. By attempting to challenge the validity of the support calculation, Stephens would be re-addressing the exact issue that was before the child support court. He had a full and fair opportunity to litigate the issue in the prior proceedings. The child support court specifically instructed Stephens that the support order could be modified if he provided the court with the correct paperwork. He did not come forward with any documents for months, he did not attempt to petition for modification of the order, nor did he perfect a direct appeal challenging the order. The trial court correctly concluded that by the time of the criminal trial, it was too late to challenge the support order. The support order needed to be challenged and changed, if at all, by the child support court or this court on direct appeal. A trial court decision regarding the use of collateral estoppel will only be reversed for an abuse of discretion. *Reid*, 719 N.E.2d at 457. We hold the trial court here did not abuse its discretion in collaterally estop-

ping Stephens from attacking the findings of the child support court.

### II. Batson Challenge

 Stephens contends that the trial court erred when it overruled his objection to the State's preemptory challenge to the only African–American prospective juror. The Supreme Court has held that a party cannot use a preemptory challenge to strike a prospective juror solely because of race. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). To establish a prima facie case of racial discrimination in the process of jury selection, the defendant must show the following three elements: "(1) the excused juror is a member of a cognizable racial group; (2) the prosecutor has exercised preemptory challenges to remove that group's members from the jury; and (3) the facts and circumstances of the case raise an inference that the exclusion was based on race." *Forrest v. State*, 757 N.E.2d 1003, 1005 (Ind.2001). The burden then shifts to the prosecutor to provide an explanation, which, if based on something other than race, will be deemed race neutral. *Id.* We give a trial court's decision regarding a *Batson* challenge great deference and will set it aside only if it is found to be clearly erroneous. *Id.*

 During voir dire, the prospective juror here told the court that she found it difficult to understand why someone who was unable to pay should be convicted of felony nonsupport. Defense counsel contended that the juror merely said she could envision a circumstance where someone would not be able to pay. Unfortunately, multiple parts of this juror's responses were inaudible to the court reporter.[6] The State indicated that it un-

---

**6.** The record indicates the following exchange between defense counsel and the prospective juror:

Q: Do you know anybody that's had to pay child support by order of the Court?

derstood the juror to say she found it difficult to accept how someone who was in prison and unable to pay could be convicted. The State argued its strike was the result of that answer and not race or gender. Because the trial court was present for this questioning, could hear the answers and observe the parties, and could personally assess credibility we will not set aside the decision. It appears from the record that the denial of the defendant's *Batson* challenge was not clearly erroneous. The State propounded a race-neutral reason for the preemptory challenge and Stephens did not prove any purposeful race discrimination. The trial court was not clearly erroneous in overruling Stephens's objection.

### III. Inability to Pay

 Stephens contends the jury and the trial court erred when they decided he did not prove an inability to pay. Inability to provide support is an affirmative defense to a charge of nonsupport of a dependent. Ind.Code § 35–46–1–5(d). The defendant bears the burden of proving his or her inability to pay. *Cooper v. State,* 760 N.E.2d 660 (Ind.Ct.App.2001), *trans. denied,* We will reverse this negative judgment only if the decision of the trial court is contrary to law. *Id.* In assessing whether a judgment is contrary to law, we must determine if the undisputed evidence and all reasonable inferences lead to one conclusion and the trial court reached another conclusion. *Id.*

A: Uh-mmm, Court ordered or would that be voluntarily?
Q: We'll say Court order from a divorce or paternity case? [sic]
A: Well, yeah, I used to own a daycare prior to working at the hospital.
Q: What's your experience with respect to child support orders? Do you have any particular once experience that affected you one way or the other?
A: I, now I've had ... (indiscernible to reporter.)

 In the bifurcated proceedings, the jury rejected the affirmative defense and found Stephens guilty of Class D felony nonsupport. The trial court then had the duty of determining whether to enhance the charge to a Class C felony for nonsupport totaling over $15,000. Stephens presented evidence by testimony from an accountant that he did not have income in 2005. During cross-examination, however, it was revealed that the accountant's conclusions were based only on the representations made by Stephens, and the 2005 income tax return he prepared was not filed with the Internal Revenue Service. Stephens testified that he was not successful in the truck driving business, he engaged in a risky real estate venture, and invested in three different properties. Stephens's father also testified that he believed his son did not have income in 2005. After considering this evidence the jury and the trial court concluded that Stephens did not adequately establish an inability to pay. We also note again that Stephens never moved to modify his support obligation. It was within the discretion of the trial court to assess the witnesses' credibility, and we will not reverse the trial court's decision regarding this affirmative defense.

### IV. Sufficiency of the Evidence

Stephens argues the State did not present sufficient evidence to sustain and en-

Q: Have you ever known anyone that was actually arrested, go to jail for it?
A: No.
Q: How do you feel about possible jail time for nonsupport of a child?
A: (Indiscernible to reporter.) . . . .
Q: Okay, what would be some of the other cases that might not make it a criminal case?
A: Inability due to circumstances.
Tr. p. 64–65.

hance the conviction for nonsupport. Specifically, Stephens contends the State failed to prove that he "knowingly" or "intentionally" failed to provide support. The Indiana Code sets out that a person who "knowingly or intentionally failed to provide support to the person's dependent child" commits Class D felony nonsupport, and if the total of unpaid support is at least $15,000 fifteen thousand dollars the person commits Class C felony nonsupport. I.C. § 35–46–1–5.

In reviewing a claim for insufficient evidence, we will not reweigh the evidence or judge the credibility of the witnesses. *Simmons v. State*, 828 N.E.2d 449, 453 (Ind.Ct.App.2005). We will affirm the conviction unless we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

Stephens first challenges the intent requirement of his conviction. We have held that when the State presents evidence that a child support order was in place and the defendant is in arrears, that evidence is sufficient to support the fact-finder's determination that the defendant intentionally failed to provide support. *Blatchford v. State*, 673 N.E.2d 781, 783 (Ind.Ct.App.1996). At trial, Stephens contended that he believed his father was sending sufficient payments to the clerk's office and did not discover until June 2006, that those payments were not credited. The jury was not required to accept Stephens's or his father's testimony on this issue. Further, no evidence was presented that Stephens checked with the trial court or Sluss to assure payments were being received. Stephens was aware of the child support order for $263 a week and the State presented evidence that he was in arrears $15,810.12. The evidence was sufficient to support the intent element of his conviction.

Stephens also contends that he did not owe over $15,000 to enhance his conviction to a Class C felony. He contends the State miscalculated what he owed by using the wrong dates for the calculations and ignoring certain deductions. We find Stephens's calculation method to be confusing and illogical. The State's calculations are in line with the statute and evidence of arrearage presented during the bench trial. Testimony from an employee of the Elkhart Prosecutor's Office Child Support Division revealed the support owed between March 2, 2004, and November 30, 2005, was $23,956.66. The instantaneous arrearage of $5,586.54 that accrued when the court retroactively applied the increased support on September 21st was deducted from this amount. The amount paid of $2,560.00 was also deducted, leaving a total arrearage as of November 30, 2005 of $15,810.12, which is in excess of the $15,000 necessary to enhance his conviction to a Class C felony. Sufficient evidence was presented to sustain a conviction for felony nonsupport of a dependent as a Class C felony.

### Conclusion

The trial court did not abuse its discretion when it collaterally estopped Stephens from attacking the previous child support order in another proceeding before another court. The trial court correctly overruled Stephens's *Batson* objection and did not err in finding that Stephens did not meet his burden to prove inability to pay. Finally, we find the evidence was sufficient to sustain the conviction. We affirm.

Affirmed.

KIRSCH, J., and ROBB, J., concur.