Dannie Ray RUNYON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 57A04–0910–CR–575.

Court of Appeals of Indiana.

March 11, 2010.

Transfer Granted June 17, 2010.

Kimberly A. Jackson, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Wade James Hornbacher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Following his plea of guilty to Class C felony nonsupport of a dependent, Dannie Ray Runyon was sentenced to a suspended sentence of eight years and placed on probation with several conditions. Runyon later violated his probation by failing to pay child support. Runyon now appeals the revocation of his probation and imposition of six years of his previously-suspended eight-year sentence. We hold that when revoking a defendant's probation for failing to support his or her dependents, the defendant bears the burden of proving that he or she was unable to provide support pursuant to Indiana Code section 35–38–2–3(f). Based on the record in this case, we conclude that Runyon has failed to prove that he had the inability to provide support and therefore the trial court did not abuse its discretion in revoking his probation. We also conclude that, given the multiple chances Runyon has been giv-

en to pay support, the trial court did not abuse its discretion in sentencing him to six years. We therefore affirm.

## Facts and Procedural History

In October 2005 the State charged Runyon with Class C felony nonsupport of a dependent. The information alleged that Runyon failed to provide over $15,000 in support for two of his children. In March 2008 Runyon pled guilty as charged. On May 1, 2008, the trial court sentenced Runyon to eight years, all suspended to probation. Because of leniency in the past, that is, a 2003 charge for nonsupport of a dependent that appears to have been dismissed, the trial court warned Runyon as follows:

I'll tell you what Mr. Runyon, uh, I'm not going to take any excuses. You, uh, better be working every week, uh, unless you're laid up in the hospital in some sort of critical care unit I'm going to expect something be paid whether it's pop bottles that you find or, or whatever, I, uh, you know failure is not acceptable understood?

Tr. p. 31. The trial court imposed the following probation conditions:

The Defendant shall pay the costs set by law in this cause in the amount of $160.00 by November 1, 2008. No fine is imposed.

The Defendant shall reimburse to the Noble County Supplemental Public Defender Services Fund, established pursuant to I.C. 33–9–11.5, for public defender services rendered herein in the sum of $100.00 by: November 1, 2008. All payments shall be made through the Clerk of the Court of Noble County.

Appellant's App. p. 29 (emphasis removed). The Order of Probation set forth the following probation user fees to be paid to the Noble County Probation Department: a $100 administrative fee, a $100 initial fee, and a $30 monthly fee. *Id.* at 31. The Order of Probation also set forth the following Special Conditions of Probation:

8. You shall pay the sum of $____ per week (as determined by your probation officer) on your child support arrearage and you will pay the arrearage of $19,063.50 (as of March 6, 2008) in full during the term of probation, PLUS the court ordered current child support.

\* \* \* \* \* \*

12. You agree to pay $100.00 for your Public Defender at a rate of $____ per ____.

*Id.* at 32.

On April 16, 2009, less than one year after Runyon was placed on probation, the State filed a Probation Violation Report. Specifically, the State alleged that Runyon violated the following probation conditions: (1) failed to pay $160.00 in court costs by November 1, 2008; (2) failed to pay any of his probation user fees, which totaled $560.00; (3) violated Special Condition No. 8; and (4) violated Special Condition No. 12. As for Special Condition No. 8, the State explained that in 2008 the amount of child support Runyon owed was $5512.00, but he paid only $2347.11. In 2009 the amount of child support Runyon owed was $1484.00, but he did not pay any support. The last time Runyon paid any child support was on October 25, 2008, in the amount of $74.96, and the current arrearage totaled $23,666.84. Runyon was arrested, and the trial court set an escrow bond in the amount of the arrearage. Runyon never made bond and was incarcerated throughout the revocation proceedings.

A probation violation hearing was held on July 30, 2009. Because Runyon believed that he had secured a new job, the State and Runyon agreed that Runyon would admit to violating his probation. If Runyon was able to provide proof of em-

ployment within the next couple of weeks, then the State would reinstate him to probation. Runyon then admitted to violating his probation as follows:

> THE COURT: So the admission of your own free and voluntary act and, uh, and you, and you do wish to admit you violated your probation?
>
> MR. RUNYON: Yes sir.
>
> THE COURT: And back when we placed you on probation among the terms were for you to pay certain fees and apparently, uh, as well as child support arrearages and in fact you did not comply, uh, with those terms is that correct?
>
> MR. RUNYON: Yes sir.
>
> THE COURT: As well as public defender fee?
>
> MR. RUNYON: Yes sir.
>
> \* \* \* \* \* \*
>
> THE COURT: All right, all right so I will show the admission. I'll reset this for August 13th at 8 a.m. See you back then. Now does he get out today?
>
> [DEFENSE COUNSEL]: No, no Judge he, he stays where—They want proof of employ-, that was the whole key otherwise we'd been done today. We just got to provide proof of employment.
>
> \* \* \* \* \* \*
>
> THE COURT: (Interrupting) I don't have many people that can get jobs from jail. So I, I, most of them can't get jobs when they're out.
>
> [DEFENSE COUNSEL]: He, he well he actually. I think we have that taken [care of] he believes.
>
> THE COURT: All right good for you.

Tr. p. 41–42.

The disposition hearing was held on August 13, 2009. When the trial court asked defense counsel the status regarding the verification of Runyon's employment, de-

fense counsel responded that he had contacted Runyon's alleged prospective employer, who said that he had provided the verification to Runyon's wife. Defense counsel then contacted Runyon's wife, who said that she thought that the verification was on her kitchen table; however, when she checked, it was not there. Runyon's wife then contacted the alleged prospective employer, who informed her that the person who prepares such letters was out and could provide another letter the following Monday. When the trial court asked Runyon information about this alleged job, Runyon responded that the business owner was a friend named "Steve" (whose last name he did not know) and that the job involved installing stereo equipment and speakers. *Id.* at 46. According to Runyon, he would make $9.00 per hour and work forty hours per week.

When it was apparent that the trial court was going to revoke Runyon's probation, defense counsel asked the trial court to impose a short term of imprisonment followed by probation so that Runyon could get a job and pay his child support. Defense counsel pointed out that Runyon paid nearly half of his child support in 2008 and the only reason he did not pay more was because he lost his job in the RV industry, which collapsed due to the poor economy. Defense counsel argued that Runyon had been unemployed for "the past six months or so" and "did not have a job." *Id.* at 49. The State's position was as follows:

> Well this has been, uh, ever since the violation was filed there's some promises made and not followed through by Mr. Runyon. Uh, in June he represented, uh, the details that he was going to be getting an inheritance that would be eleven acres of land in Virginia and he was going to use that to pay off his arrearage on that the hearing be contin-

ued so he could bring us the details on the estate in July [which did not pan out].... [T]he next promise was in July he was going to bring in proof of employment today and he doesn't even know his employer's name, uh, much less any of the details about this alleged employment. Uh, with the arrearage and ... the length of time that's passed, uh, the efforts we've made to do everything short of just incarcerating him I think this is the point where, uh, he needs to go to prison now for the balance of the sentence. And if at some point he does get this job we'd like to take a look at it and put him on a work release program or a community corrections program because we would like to see money coming in. But I think at this point he has, uh, shown that he doesn't deserve to have all of his freedom.

*Id.* at 55–56, 57–58. The trial court ruled as follows:

THE COURT: So Mr. Runyon, uh, you've not done a very good job in getting the child support paid so far. I mean we've got, I don't know what the arrearage is today ...

[THE STATE]: [$25,283.41].

THE COURT: So we are further behind than what we started out. We started out at 23,666, we're now at 25,-283, so we've gone up two thousand since I gave you the opportunity to pay your support, keep your support current and reduce it. So we've fallen, uh, a couple grand further behind. Uh, [defense counsel] wants me to give you some short-term jail and put you back on probation. Why, why would I think it would be any different next time than this time?

MR. RUNYON: Because Your Honor I'm, like my attorney said, I'm willing to get out to work and get this paid off.

THE COURT: Well what, what, why are you willing now and you weren't willing then? That makes no sense to me?

MR. RUNYON: Well I was. Like I said I lost my job. I had a good job and when the economy went bad you know they closed their doors I didn't have no—

THE COURT: (Interrupting) How long did you have that good job?

MR. RUNYON: Uh, Well the time that I got—Not very long it was like maybe four or five months and then, you know when the RV's went bad and I lost my job.

THE COURT: And during that four or five months you paid a whole ton of money?

MR. RUNYON: No, no sir.

THE COURT: Yeah. I mean did you make all the payments you were supposed to make during that time?

MR. RUNYON: No I didn't have any money. Like I say, I signed up for my unemployment and the State took it.

THE COURT: I'm talking about the period that you said that you had this great job?

MR. RUNYON: Yeah, I was paying support then Your Honor.

THE COURT: And you've got this skill as a stereo—

MR. RUNYON: (Interrupting) Yes.

THE COURT: (Continuing) uh installer? What is it that you didn't go get a job doing that? ... So we've had some problems over the years with not paying support correct?

MR. RUNYON: Yes.

THE COURT: ... All right so this has been going on for four years then? Right?

MR. RUNYON: Yes sir.

THE COURT: And in four years you only had one job?

MR. RUNYON: No I've had, I've had, a couple Your Honor.

THE COURT: It just seems like we keep going backwards.

\* \* \* \* \* \*

THE COURT: All right I'm going to, I am going to revoke your, uh, probation at this point. And I am going to order, uh, I'm going to give you some credit for having come in and admitted. And I'm going to order you to serve six years of, uh, that sentence. I'll give you credit since May 18th, show the arrearage at $25,283.41. Uh, if some substantial payment is, is made, some job is, uh, obtained [defense counsel] will let us know and, and I guess we can look at this again under some motion to modify. But for today I don't have any of those things, so, uh, you go to the Department of Correction[ ]. Good luck.

*Id.* at 50–52, 54, 58–59. The trial court entered a written order finding that Runyon had "violated terms and conditions of probation as alleged in the Probation Violation Report filed April 16, 2009," revoked his probation, and sentenced him to six years in the DOC. Appellant's App. p. 10. Runyon now appeals the revocation of his probation and imposition of six years of his previously-suspended eight-year sentence.

### Discussion and Decision

Runyon does not dispute that he violated the terms of his probation by failing to pay his child support. Appellant's Reply Br. p. 4. *See Gustman v. State,* 660 N.E.2d 353, 356 (Ind.Ct.App.1996) ("Moreover, the Indiana Code expressly recognizes that the payment of child support is an appropriate condition of probation." (citing Ind.Code § 35–38–2–2.3(a)(4) ("As a condition of probation, the court may require a person to do a combination of the

following: . . . Support the person's dependents and meet other family responsibilities.")))), *reh'g denied, trans. denied.* Rather, he contends that the trial court erred by revoking his probation because Indiana Code section 35–38–2–3(f) provides that probation may not be revoked for failure to comply with a condition of a sentence that imposes financial obligations on the person unless the person recklessly, knowingly, or intentionally fails to pay. Runyon also contends that the trial court erred in imposing six years of his previously-suspended eight-year sentence.

### I. Revocation of Probation

 Runyon first contends that the trial court erred by revoking his probation. Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled. *Prewitt v. State,* 878 N.E.2d 184, 188 (Ind.2007). The trial court determines the conditions of probation and may revoke probation if the conditions are violated. Ind.Code § 35–38–2–3(a); *Prewitt,* 878 N.E.2d at 188. A trial court's decision to revoke probation is reviewed for an abuse of discretion. *Jones v. State,* 885 N.E.2d 1286, 1290 (Ind.2008). We will not find an abuse of discretion unless "the trial court's decision is against the logic and effect of the facts and circumstances before the court." *Prewitt,* 878 N.E.2d at 188.

 Probation revocation is a two-step process. *Vernon v. State,* 903 N.E.2d 533, 537 (Ind.Ct.App.2009), *trans. denied.* First, the court must make a factual determination that a violation of a condition of probation actually occurred. *Id.* If a violation is proven, then the trial court must determine if the violation warrants revocation of the probation. *Id.* When a probationer admits to a violation, the court can proceed to the second step and determine whether the violation warrants revocation.

*Id.* But "even a probationer who admits the allegations against him must still be given an opportunity to offer mitigating evidence suggesting that the violation does not warrant revocation." *Id.*

Runyon argues that revocation of his probation was not warranted because he did not recklessly, knowingly, or intentionally fail to pay his child support. He relies on Indiana Code section 35–38–2–3(f), which provides: "Probation may not be revoked for failure to comply with conditions of a sentence that imposes financial obligations on the person unless the person recklessly, knowingly, or intentionally fails to pay." This Court has addressed Section 35–38–2–3(f) numerous times in the context of discussing whether a defendant's probation should be revoked for failure to pay restitution. In such situations, we have held that the State bears the burden of proving that the defendant had the ability to pay. *See Szpunar v. State,* 914 N.E.2d 773, 779 (Ind.Ct.App.2009).

■ In contrast, this Court has only sparingly addressed Section 35–38–2–3(f) in the context of discussing whether probation should be revoked for failing to pay child support. And when we have addressed subsection (f) in the context of child support, *see Gustman,* 660 N.E.2d at 356 (addressing child support as a condition of probation but not specifically mentioning Section 35–38–2–3(f)); *Ratliff v. State,* 546 N.E.2d 309, 312 n. 3 (Ind.Ct. App.1989) (at that time subsection (f) was located at subsection (e)), *trans. denied,* we neither fully analyzed the issue nor

recognized that revoking probation for failing to pay child support is unique because a person can also be convicted for failing to support his or her dependents. That is, pursuant to Indiana Code section 35–46–1–5:

> (a) A person who knowingly or intentionally fails to provide support to the person's dependent child commits nonsupport of a child, a Class D felony. However, the offense is a Class C felony if the total amount of unpaid support that is due and owing for one (1) or more children is at least fifteen thousand dollars ($15,000).

"It is a defense that the accused person was unable to provide support." Ind.Code § 35–46–1–5(d). Inability to provide support is an affirmative defense to a charge of nonsupport of a dependent. *Stephens v. State,* 874 N.E.2d 1027, 1034 (Ind.Ct.App. 2007), *trans. denied.* The defendant bears the burden of proving his or her inability to pay. *Id.*[1]

■ Because in a prosecution for non-support of a dependent a defendant bears the burden of proving that he was unable to provide support, it likewise follows that when revoking a defendant's probation for failing to support his or her dependents, the defendant also bears the burden of proving that he or she was unable to provide support. To hold otherwise would create an undesirable inconsistency; that is, a defendant would have to prove his or her inability to pay in criminal proceedings for nonsupport of a dependent, but the State would have to prove the defendant's

---

1. In general, a defendant bears the burden of proving an affirmative defense. *Blatchford v. State,* 673 N.E.2d 781, 782 (Ind.Ct.App.1996). "However, if the affirmative defense specifically negates an element of the crime, then the burden of proof lies on the State to establish beyond a reasonable doubt the absence of the affirmative defense." *Id.* at 782–83 (citing *Ward v. State,* 438 N.E.2d 750, 753 (Ind.

1982); *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)). "A difference exists between facts in mitigation of culpability that are separate and distinct from the elements of the crime and an affirmative defense that negates an element of the crime." *Id.* at 783 (citing *Ward,* 438 N.E.2d at 753).

ability to pay in probation revocation proceedings for failure to pay child support. This inconsistency could result in the State strategically choosing either to file a new criminal charge for nonsupport of a dependent (based on the increased amount of unpaid child support) or to institute a probation revocation proceeding, depending on what burden it believed could be proven based on the evidence it possessed. Therefore, we conclude that if the State files a petition to revoke a defendant's probation based upon the defendant's failure to pay child support pursuant to Indiana Code section 35–38–2–2.3(a)(4), the defendant bears the burden of proving that he or she had the inability to pay.

■ Having established that Runyon bears the burden of proof, we note that the record in this case contains little evidence concerning his work history. From what we have assimilated from the various hearings, at Runyon's September 7, 2007, initial hearing for nonsupport of a dependent, Runyon had been working at Patrick Industries in Elkhart, Indiana, which made components for the RV industry, for approximately four months. Tr. p. 6. The March 6, 2008, guilty plea hearing reflects that Runyon had recently lost this job and was receiving unemployment benefits. *Id.* at 22. In fact, he had a job interview scheduled for that day. *Id.* At the May 1, 2008, sentencing hearing for nonsupport of a dependent less than two months later, the record reflects that Runyon had secured a new job. *Id.* at 29. According to the Presentence Investigation Report, Runyon was hired on March 12, 2008, at Dometic through a staffing agency and was working forty hours per week at $9.00 per hour. Runyon made his last child support payment on October 25, 2008. At the May 19, 2009, initial hearing on the petition to revoke Runyon's probation, Runyon was "laid off" and was "getting

unemployment barely." *Id.* at 35. There is no information in the record concerning when Runyon lost his job. At the August 13, 2009, disposition hearing, Runyon's attorney argued that Runyon had been unemployed for the past six months "or so."

What we have gleaned from the record is why Runyon lost his last two jobs (the collapse of the RV industry in the Elkhart area), but not when he lost his last job, how much unemployment assistance he was receiving, and what steps Runyon took after losing his last job to support his dependents. If Runyon's unemployment benefits were not enough to meet his child support obligation—which is essentially what he is arguing—then Runyon has failed to show on this record that he tried to secure new employment that was sufficient to meet his child support obligation, short of providing the name "Steve." The trial court even expressed skepticism at his alleged prospective employment. Because Runyon apparently possessed the job skill of installing stereo equipment and speakers (a skill which Runyon claimed to have for quite awhile), the court queried why he only now was trying to secure this job from jail when he had been unemployed for quite some time and was not making any child support payments.

On this record, all Runyon has shown is that he lost his job on some unspecified date and was receiving an unspecified amount of unemployment assistance that was not sufficient to meet his child support obligation. In addition, Runyon has not shown that he took *any* steps to try to get another job in an attempt to meet his child support obligation. And once Runyon was in jail, the State was even willing to give him a "get out of jail free" card if he could provide written verification of employment. Though Runyon claimed he could provide such verification and was given two weeks to do so, all Runyon ended up providing

was the name "Steve." Runyon has fallen short of meeting his burden of proving his inability to pay. As such, the trial court did not abuse its discretion in revoking Runyon's probation for failing to support his dependents.

## II. Sentence

Runyon next contends that the trial court erred in sentencing him to six years of his previously-suspended eight-year sentence. The trial court's sentencing decision for a probation violation is reviewable under the abuse of discretion standard. *Prewitt*, 878 N.E.2d at 188. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Id.* Upon the revocation of probation, the trial court may:

(1) Continue the person on probation, with or without modifying or enlarging the conditions.

(2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.

(3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

Ind.Code § 35–38–2–3(g).

The record shows that in 2008 when Runyon pled guilty to nonsupport of a dependent, he had accumulated a child support arrearage of approximately $19,000, which represented years of non-payment. When suspending Runyon's entire eight-year sentence, the trial court impressed upon Runyon the importance of paying his child support because a 2003 nonsupport of a dependent charge had been dismissed. Nevertheless, less than one year after being placed on probation, the State filed a petition to revoke Runyon's probation. At that time, Runyon's child support arrearage had not decreased but rather had grown to $23,666.84. Despite this backward progress, the State gave Runyon another chance to return to probation if he could provide written verification of employment. Between the time that Runyon admitted to violating his probation and his disposition hearing, Runyon, despite claiming that he had secured a job with a family friend, was only able to come up with the name "Steve." Although Runyon lost two jobs in the RV industry, which no doubt collapsed in this economy, he has provided us with no evidence concerning when he lost his last job, how much unemployment assistance he was receiving, and whether he even tried to acquire a new job so that he could at least attempt to meet his child support obligation.[2] Instead, Runyon stopped making his child support payments altogether. Given the multiple chances Runyon has been given, we cannot say that the trial court abused its discretion in sentencing Runyon to six years of his previously-suspended eight-year sentence.

Affirmed.

RILEY, J., and CRONE, J., concur.

---

2. Although Runyon claims that his sons were eighteen or older and therefore he was not responsible for their support, the trial court advised him about having his children emancipated so that his support would stop accruing. *See* Ind.Code § 31–16–6–6. Because there is no evidence that Runyon has followed this procedure, this is not a proper ground upon which to avoid paying child support. In any event, it is no ground upon which to excuse his arrearage.