Eric SIMMONS, Anthony Davis, Appellants–Defendants,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 27A02–0409–CR–807.

Court of Appeals of Indiana.

June 3, 2005.

---

Shane E. Beal, Marion, IN, Attorney for Appellant, Eric Simmons.

Craig Persinger, Marion, IN, Attorney for Appellant, Anthony Davis.

Steve Carter, Attorney General of Indiana, Grant H. Carlton Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Anthony Davis and Eric Simmons appeal their convictions for Class A felony conspiracy to deal in cocaine in excess of three grams. Davis also appeals his sentence. We affirm.

### Issues

We restate the issues as:

I. whether there is sufficient evidence to support Davis's and Simmons's convictions for conspiracy to deal in cocaine in excess of three grams when neither of the two individual transactions involved more than three grams of cocaine; and

II. whether the jury rendered inconsistent verdicts.

Davis raises another issue, which we restate as whether he was properly sentenced.

### Facts[1]

Late in the evening of June 4, 2002, or early in the morning of June 5, 2002, Derrius Purtee, Miko Harris, Antonio Dawson, and Simmons drove from Detroit, Michigan, to Marion, Indiana. When they arrived in Marion, they went to an apartment on Boots Street. Purtee played video games while Harris cut crack cocaine into small pieces and Dawson and Simmons placed the pieces into bags.

When they finished, Purtee, Harris, and Simmons drove to an apartment on 9th Street. Davis, a friend from Detroit, was at the apartment, which had very little furniture. Davis gave Harris a "couple hundred dollars." Tr. p. 420. In return, Harris gave Davis a bag containing rocks of cocaine. Simmons took an overnight bag from Harris's car into the 9th Street

---

1. We deny the Appellants request for oral argument.

apartment, and Harris and Purtee returned to the Boots Street apartment.

Early in the morning on June 5, 2002, confidential informant Euthan Lampkin arrived at the 9th Street apartment to purchase cocaine. While Lampkin was in the apartment, Simmons gave Davis the cocaine, and Davis gave the cocaine to Lampkin. When Lampkin paid for the cocaine, Davis instructed him to place the money in a stack of bills Simmons was counting. Lampkin returned to the police officer overseeing the controlled buy, completed the necessary procedures, and returned to the 9th Street apartment to make another buy. During the second purchase, Davis sold Lampkin more cocaine. In the first buy, Lampkin purchased 1.61 grams of cocaine, and during the second buy Lampkin purchased 1.51 grams of cocaine. Lampkin purchased a total of 3.12 grams from the 9th Street apartment that morning. The same day, Lampkin also twice purchased cocaine at the Boots Street apartment.

On June 7, 2002, the State charged Davis with Class A felony dealing in cocaine, Class A felony conspiracy to deal in cocaine, Class D felony maintaining a common nuisance, and Class A misdemeanor possession of marijuana. That same day, the State charged Simmons with two counts of Class B felony dealing in cocaine and one count of Class A felony conspiracy to deal in cocaine, Class A felony dealing in cocaine, Class D felony maintaining a common nuisance, and Class A misdemeanor possession of marijuana.

Prior to trial, several of these charges were dismissed. Simmons was tried on one of the Class B felony dealing in cocaine charges and the Class A felony conspiracy to deal in cocaine charge. Davis was tried on the sole charge of Class A felony conspiracy to deal in cocaine. The conspiracy charge against Simmons alleged in part:

> During May and June, 2002, in Marion, Grant County, State of Indiana, Antonio Eugene Dawson, with the intent to commit the felony crime of Dealing in cocaine in an amount greater than three (3) grams, did agree with Anthony Davis, Eric Darnell Simmons, "Randy", and/or other unknown persons to commit said felony crime; and in furtherance of such agreement, Antonio Eugene Dawson, Anthony Davis, "Randy", and/or other unknown persons did perform one or more of the following over acts, to wit:
>
> 1) Located a source for cocaine that was to be transported to, and sold within, Grant County, Indiana;
>
> 2) Purchased and/or otherwise acquired cocaine from said source;
>
> 3) Obtained means of transportation for the purpose of traveling to Grant [C]ounty, Indiana;
>
> 4) Traveled to Grant County, Indiana;
>
> 5) Transported cocaine to Grant County, Indiana;
>
> 6) Purchased, rented, and/or otherwise acquired possession of one or more residences in Grant County, Indiana, to be used for manufacturing, storing/possessing, selling, and/or delivering crack cocaine to one or more customers;
>
> 7) Manufactured, stored/possessed[,] sold and/or delivered crack cocaine to one or more customers in amounts greater than three (3) grams;
>
> 8) Screened potential customers at the door(s) of said residence(s) prior to allowing entry for the purpose of purchasing crack cocaine;
>
> 9) Acquired and/or possessed Ohaus electronic digital scales to be used for

measuring various amounts/weights of cocaine; and/or[;]

10) Received U.S. cash currency and/or other items of value in exchange for cocaine delivered to customers[.]

Simmons's App. pp. 110–11. The conspiracy charge against Davis was substantially similar to the information filed against Simmons. *See* Davis's App. pp. 13–14.

Davis and Simmons were tried together, and a jury found them both guilty of Class A felony conspiracy to deal in cocaine and acquitted Simmons of the dealing charge. They now appeal.

## Analysis

### I. Sufficiency of the Evidence

Davis and Simmons ("the Appellants") argue that the State should not be permitted to combine the weight of two separate sales to achieve an aggregated weight of three or more grams of cocaine, enhancing the offense to a Class A felony. The Appellants frame their argument in terms of sufficiency of the evidence. They contend that there is not sufficient evidence to support their convictions for a Class A felony because each separate sale to Lampkin involved less than three grams of cocaine.

■ In reviewing a claim of insufficient evidence, we will affirm the conviction unless, considering only the evidence and all reasonable inferences favorable to the judgment, we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Bethel v. State*, 730 N.E.2d 1242,

1243 (Ind.2000). We neither reweigh the evidence nor judge the credibility of the witnesses. *Id.*

Dealing in cocaine is defined as knowingly or intentionally manufacturing, financing the manufacture of, delivering, or financing the delivery of cocaine or possessing, with the intent to manufacture, finance the manufacture of, deliver, or finance the delivery of cocaine. Ind.Code § 35–48–4–1(a). Dealing in cocaine is a Class B felony. *Id.* However, it is enhanced to a Class A felony if "the amount of the drug involved" weighs three or more grams. I.C. § 35–48–4–1(b). "A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony. A conspiracy to commit a felony is a felony of the same class as the underlying felony." I.C. § 35–41–5–2.

The Appellants assert that we should construe the dealing statute against the State. Although we agree that penal statutes are strictly construed against the State, *Mayes v. State*, 744 N.E.2d 390, 393 (Ind.2001), we need not interpret the statute because we are only asked to review the sufficiency of the evidence.

The Appellants also point out, "there is no principled way for trial courts or appellate courts to rein in the potentially vast scope of this theory." Davis's Br. p. 4. We agree that there is danger in eviscerating the distinction between Class A and Class B felonies and allowing the enhancement to be charged in circumstances not intended by the legislature.[2] However, we can-

2. The State contends that Indiana Code Section 35–48–4–1 is not limited to a single transaction and points to *Woodford v. State*, 752 N.E.2d 1278, (Ind.2001), *cert. denied*, 535 U.S. 999, 122 S.Ct. 1564, 152 L.Ed.2d 486 (2002). In that case, a search of Woodford's car revealed nine individually wrapped pieces of a controlled substance later identified as

3.2 grams of cocaine. *Id.* at 1280. Woodford was charged and convicted of Class A felony possession of cocaine in excess of three grams. Woodford challenged the search and the forensic testing of the cocaine, and our supreme court affirmed his conviction. Although the State cites to the facts of this case as support for affirming the Appellants' con-

not conclude as a matter of law that Indiana Code Section 35–48–4–1 necessarily prohibits the State from charging and proving conspiracy to deal in cocaine in excess of three grams when no single buy involves three or more grams of cocaine.[3] This determination is subject to the specific facts of each case and the allegations in the charging information.

The Appellants contend that even if the weight of the two transactions with Lampkin at the 9th Street apartment may be aggregated, there is insufficient evidence of an agreement to deal in cocaine. The State was not required to prove the existence of a formal express agreement to establish the Appellants agreed to deal in cocaine. *Porter v. State*, 715 N.E.2d 868, 870 (Ind.1999). " 'It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to commit the offense.' " *Id.* at 870–71 (quoting *Williams v. State*, 274 Ind. 94, 96, 409 N.E.2d 571, 573 (1980)). The State may prove an agreement by direct or circumstantial evidence. *Id.* at 871. Mere association with a co-conspirator, standing alone, is insufficient to support a conviction for conspiracy. *Id.*

In *Washington v. State*, 807 N.E.2d 793 (Ind.Ct.App.2004), we addressed the sufficiency of the evidence in a similar case. In late May and early June 2002, a confidential informant, Cummings, contacted

Nelson to purchase cocaine on five separate occasions. *Id.* at 794–95. On the first occasion, Owensby delivered the cocaine to Cummings. *Id.* at 795. On the second occasion the defendant, Washington, delivered the cocaine to Cummings. *Id.* On the third and fourth occasions, Nelson delivered the cocaine to Cummings. *Id.* On the fifth occasion, Owensby delivered the cocaine to Cummings. *Id.*

Although none of the individual buys was in excess of three grams, the aggregate weight of the five buys was 3.61 grams. *Id.* The State charged Washington with Class A felony conspiracy to deal in cocaine in excess of three grams and a jury found him guilty of this charge. *Id.* at 795–96. On appeal, Washington argued that conspiracy to deal in cocaine should require evidence beyond a reasonable doubt of a single delivery of three or more grams of cocaine. *Id.* at 796. We did not reach this question, however, because there was no evidence of an agreement to or his involvement in the other four controlled buys. *Id.* at 797. We rejected the State's proposition that evidence that Washington agreed to deal in cocaine on one occasion leads to the inevitable and reasonable inference that he was party to an agreement to do so on the other four occasions. *Id.* Without such evidence, we reversed and vacated Washington's conviction for the Class A felony. *Id.*

---

victions, it is distinguishable on two grounds. First, Woodford did not argue on appeal that the weight of the individually wrapped pieces of cocaine should not be aggregated. More importantly, the nine individually wrapped pieces were found during a single incident of possession. The basis of the enhancement was not Woodford's possession of less than three grams of cocaine on nine separate occasions.

3. Given the definitions of manufacture and deliver, we can contemplate numerous situa-

tions in which people may conspire to deal in cocaine in excess of three grams without actually selling it to another person. *See* I.C. § 35–48–1–12 (defining delivery as an actual or constructive transfer from one person to another or organizing or supervising a transfer); I.C. § 35–48–1–18 (defining manufacture to include any packaging or repackaging of the substance or labeling or relabeling of its container or the organization or supervision of such).

Unlike in *Washington*, the Appellants' actions here demonstrate an intelligent and deliberate agreement to deal in three or more grams of cocaine. *See Porter*, 715 N.E.2d at 870–71. The evidence before us indicates that Harris, Dawson, Simmons, and Davis all knew each other from Detroit and late on the night of June 4, 2002, or early in the morning on June 5, 2002, Harris, Dawson, and Simmons drove from Detroit to an apartment on Boots Street in Marion. When they arrived the apartment, Harris divided cocaine into pieces and Dawson and Simmons placed it in "[l]ittle bitty bags" or "button bags." Tr. p. 403. After they finished dividing the cocaine, Harris and Simmons drove to a minimally furnished apartment on 9th Street where they met Davis. Once there, Davis gave Harris approximately two hundred dollars, and Harris gave Davis a sandwich bag containing loose rocks of cocaine. When Harris left to return to the Boots Street Apartment, Simmons stayed with Davis at the 9th Street apartment.

Lampkin first purchased 1.61 grams of cocaine from Simmons and Davis. During this transaction, Lampkin knocked on the apartment door using a special knock, Simmons gave the cocaine to Davis to give to Lampkin, and Davis instructed Lampkin to place the money he used to pay for the cocaine with other money that Simmons was counting. During the second buy, which occurred very soon after the first, Davis sold Lampkin 1.51 grams of cocaine. Later that day, Lampkin twice bought cocaine at the Boots Street apartment.

These buys occurred very close in time, only over a period of hours. Further, as the State alleged, the conspiracy is not limited to the agreement to sell cocaine to Lampkin, but includes the location of an apartment and the transportation and preparation of the cocaine, in addition to the sales to Lampkin. This is not a situation in which the State attempted to link several independent buys to enhance an allegation of dealing in cocaine from a Class B felony to a Class A felony. Given the specific facts of this case, a reasonable jury could find beyond a reasonable doubt an agreement to deal in cocaine in excess of three or more grams and that several of the overt acts alleged in the information had occurred. There is sufficient evidence to support the Appellants' convictions.

## II. Inconsistent Verdicts

The Appellants next argue that the jury's guilty verdicts for conspiracy to deal in cocaine are inconsistent with Simmons's acquittal of the dealing in cocaine charge. Verdicts so extremely contradictory and irreconcilable may require corrective action. *Cleasant v. State*, 779 N.E.2d 1260, 1263 (Ind.Ct.App.2002). However, where the trial of one defendant results in acquittal of some charges and convictions on others, the results will survive a claim of inconsistency where the evidence is sufficient to support the convictions. *Id.* We will not engage in speculation about the jury's thought processes or motivation. *Id.* Generally, each count of a multi-count information is considered a separate information. *Id.* At trial, each count is treated and measured separately, and a defendant may be found guilty or acquitted on one or more or all of several charges. *Id.*

In his brief, Davis adopts Simmons's argument on this issue. The State points out, however, that Davis was only tried on the conspiracy to deal in cocaine charges. The State's allegation that Davis committed dealing in cocaine was dismissed prior to trial. As we observed in *Green v. State*, 808 N.E.2d 137, 139 (Ind.Ct.App.2004), "We believe that it is axiomatic that, at a minimum, there must be two verdicts before any question of fatally inconsistent verdicts exists." Because there was only one count pending against

Davis at trial, the jury could not have rendered inconsistent verdicts against him. *See id.*

■ At trial, the information against Simmons alleged that he committed Class A felony conspiracy to deal in cocaine and Class B felony dealing in cocaine. The jury found Simmons guilty of conspiracy to deal in cocaine and acquitted him of the dealing in cocaine charge. Unlike with Davis, because the jury rendered two verdicts against Simmons, it is possible that they could be inconsistent.

Simmons cites to *Owsley v. State,* 769 N.E.2d 181, 182 (Ind.Ct.App.2002), *trans. denied,* in which we reversed Owsley's conviction for conspiracy to deal in cocaine where the jury found him guilty of conspiracy to deal in cocaine and not guilty of possession of cocaine and dealing in cocaine because the verdicts were inconsistent. When Owsley was arrested after a drug sale, he was in possession of the twenty-dollar bill he was given during the transaction, but a search of his person and the surrounding vicinity uncovered no cocaine. *Id.* at 182. The State charged Owsley with conspiracy to deal in cocaine, dealing in cocaine, and possession of cocaine. The only overt act the State alleged regarding the conspiracy charge was the act of providing cocaine. *Id.* at 182. The jury then rendered a guilty verdict on the conspiracy to deal in cocaine charge and not guilty verdicts on the possession of and dealing in cocaine charges. *Id.* at 183. In reversing Owsley's conviction, we asked "if Owsley did not possess cocaine on that date, how could he have provided cocaine to [the Seller]?" *Id.* at 186.

Simmons asks if he did not deal in cocaine as alleged by the State, "what did he do in furtherance of the conspiracy to deal in cocaine?" Simmons's Br. p. 11. The facts in *Owsley,* however, are much different than those before us today. Here, the State alleged several overt acts in furtherance of the conspiracy. The State was free to establish the conspiracy by proving any one of the overt acts alleged in the information. The State was not required to establish that Simmons actually sold the cocaine to Lampkin, as Simmons suggests. We have already concluded there is sufficient evidence to support Simmons's conviction for conspiracy to deal in cocaine. The jury was free to believe some portions of the evidence of the conspiracy to deal in cocaine and the alleged overt acts while at the same time discredit other portions of the evidence as it related to the actual sale of cocaine to Lampkin. *See Hodge v. State,* 688 N.E.2d 1246, 1249 (Ind.1997). We also note that Davis, not Simmons, was the one who directly sold the cocaine to Lampkin. The jury's verdicts are not so extremely contradictory and irreconcilable as to require reversal.

### III.  *Davis's Sentence*

■ Davis also argues that his enhanced sentence is improper under *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 2543, 159 L.Ed.2d 403 (2004), which held that every defendant has a Sixth Amendment right "to insist that the prosecutor prove to a jury all facts legally essential to the punishment." The Supreme Court followed and expanded upon *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000), which had held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Although it was disputed whether *Blakely* applied to Indiana's sentencing scheme, in *Smylie v. State,* 823 N.E.2d 679, 685 (Ind.2005), our supreme court concluded it did.

Here, the trial court found as aggravating circumstances that Davis had a lengthy criminal history, that he was on probation at the time of the offense, and that he was in need of correctional or rehabilitative treatment best provided by a commitment to a penal facility. The trial court gave each aggravator moderate weight. The trial court found no mitigating circumstances and sentenced Davis to an enhanced sentence of forty years. *See* I.C. § 35–50–2–4 (setting presumptive sentence for a Class A felony at thirty years and allowing enhancement of an additional twenty years) (amended 2005).

Davis concedes that the trial court properly considered his criminal history as an aggravator under *Blakely* and *Apprendi* but contends that we should remand for resentencing because of the trial court's reliance on the two other aggravators. Where the use of some aggravators violates *Blakely* and others do not, the question is whether we can say beyond a reasonable doubt that the trial court's reliance on improper aggravators was "harmless" because it would have imposed the same sentence based solely on the proper aggravators. *See Holden v. State*, 815 N.E.2d 1049, 1060 (Ind.Ct.App.2004), *trans. denied* (2005).

Davis's adult criminal history includes two convictions for larceny, two convictions for attempted receiving and concealing stolen property, two convictions for attempted delivery/manufacture of less than 50 grams of cocaine, and possession for less than twenty-five grams. Davis's four drug related convictions occurred within two years prior to this offense. Given that Davis has numerous convictions and several drug related convictions and the lack of any mitigators, we conclude beyond a reasonable doubt that the trial court would have imposed the same sentence based solely on his criminal history. *See id.* The trial court did not err in enhancing Davis's sentence.

### Conclusion

Under the limited facts of this case, there is sufficient evidence to sustain the Appellants' convictions for Class A felony dealing in cocaine. The verdicts rendered in this case are not so inconsistent as to require reversal. Finally, the trial court did not err in enhancing Davis's sentence. We affirm.

Affirmed.

KIRSCH, C.J., and BAKER, J., concur.