**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 31 2014, 9:09 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**WILLIAM A. RAMSEY**
**RACHEL K. STEINHOFER**
Murphy Ice LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARLAN LONG, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1403-CR-200 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven R. Eichholtz, Judge
Cause No. 49G20-1108-FA-60050

**December 31, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Marlan Long appeals his conviction and sentence for conspiracy to deal cocaine as a class A felony. Long raises four issues, which we revise and restate as follows:

I. Whether the evidence is sufficient to sustain his conviction for conspiracy to deal cocaine;

II. Whether the trial court erred in denying his motion for mistrial;

III. Whether the court abused its discretion in admitting certain evidence; and

IV. Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

FACTS AND PROCEDURAL HISTORY

In August 2011, law enforcement officers from the Metro Drug Task Force of the Indianapolis Metropolitan Police Department ("IMPD") and the Drug Enforcement Agency ("DEA") arranged for a confidential informant (the "C.I.") to purchase a kilogram, or brick, of cocaine from Vernon Woodruff, who had been the target of law enforcement investigation. Law enforcement had previously used the C.I. to purchase several smaller amounts of cocaine from Woodruff. The "buy bust" was to arrest the source of the supply along with Woodruff. Transcript at 32. Law enforcement officers desired to arrange a buy bust in part because they did not wish to purchase $30,000 worth of cocaine.

On August 23, 2011, a DEA agent installed a video recording device in the C.I.'s vehicle. Law enforcement, consisting of approximately fifteen officers, established

surveillance around Woodruff's residence, and the C.I. was searched for contraband and money and was fitted with a recording device.

The C.I. contacted Woodruff and stated he wanted a kilogram of cocaine, and Woodruff called Bryant Williams to ask Williams if he could obtain the cocaine. Williams told Woodruff that his cousin, Long, could supply the kilogram. Woodruff set up a meeting with the C.I. and Williams. Woodruff would receive some money from the seller and some cocaine from the C.I. for his role in the transaction. Woodruff's role was to arrange for the buyer, the C.I., to be at the meeting, and Williams's role was to arrange for the seller to be at the meeting.

The C.I. arrived at Woodruff's house and parked at the rear of the house, and Woodruff exited his house and spoke with the C.I. for a few minutes. Woodruff initially asked the C.I. to go inside the house, but the C.I. stated he wished to stay outside. The C.I. moved his vehicle to the front of Woodruff's house. Woodruff exited and went back inside his house a couple of times. Woodruff and Williams waited inside for the cocaine to be delivered.

Eventually, Long and Che Brownlow arrived at Woodruff's house driving a Camaro, and Williams went outside and let them in the house. Woodruff had never met Long or Brownlow. Brownlow was carrying a blue or black bag which contained the cocaine, and he placed the bag on the kitchen table. Woodruff said that the buyer would want to see and sample it before any money was transferred.

3

Long opened the bag, displaying the kilogram of cocaine wrapped in cellophane. Woodruff handed a utility knife to Long, and Long cut the wrapper off of the cocaine. Woodruff, Williams, Long, and Brownlow stood around the kitchen table. Williams asked Long the price of the cocaine, Long decided the price, and Williams planned to add an amount to the price as a fee for Williams and Woodruff.

Williams and Woodruff exited the house, with Williams carrying the bag of cocaine, and entered the C.I.'s vehicle. Williams opened the bag and showed it to the C.I., and the C.I. said that it was good and then made a phone call. After receiving the takedown signal from the detective, law enforcement officers moved in around the C.I.'s vehicle and entered Woodruff's house, arresting Long, Brownlow, Woodruff, and Williams and retrieving the kilogram of cocaine. Laboratory analysis of the substance was performed within twenty-four hours, and the substance was confirmed to be a kilogram of cocaine.

On August 26, 2011, the State charged Long with Count I, conspiracy to deal in cocaine as a class A felony; Count II, dealing in cocaine as a class A felony; Count III, possession of cocaine as a class C felony; and Count IV, operating a vehicle while suspended as an habitual traffic violator as a class D felony.[1] A jury trial was conducted

---

[1] The appellant's appendix does not include a copy of the charging information. The trial court read the charging information at the beginning of the trial, and the court stated in part that the information, "omitting the formal part reads" as follows:

> that on or about August 23rd, 2011, Vernon Woodruff, Bryant Williams, Marlan Long and Che Brownlow did with intent to commit the felony of dealing in cocaine, agree with each other to commit said felony of dealing in cocaine which is to knowingly deliver to a confidential informant a controlled substance, that is cocaine in an amount greater than

4

in January 2013, but the jury did not reach a verdict and the court declared a mistrial. On October 3, 2013, Long filed a Request for 404(b) Notice requesting that the prosecution provide reasonable notice in advance of trial of any evidence of other crimes, wrongs or acts that it intended to introduce at trial, and the court granted the request. A second jury trial was held on January 15 and 16, 2014. At the beginning of the trial, Long objected to any admission of evidence pertaining to the cocaine because the evidence itself had been physically destroyed, and the court overruled Long's objection. IMPD Officer Dale Young testified, in response to questioning by Long's counsel, that he did not find cocaine on Long as a part of the investigation in this case and that he knew Long from previous investigations. Long moved for a mistrial based on Officer Young's statements, and the court denied Long's motion. Prior to final arguments, the State moved to dismiss the charge under Count IV, and the court granted the motion. The jury found Long guilty on Count I, conspiracy to commit dealing in cocaine as a class A felony. The jury was deadlocked as to Counts II and III, and the court declared a mistrial as to those counts. Following a sentencing hearing, the court sentenced Long to thirty years in the Department of Correction.

---

three grams. And that Bryant Williams performed the following overt act in furtherance of the agreement, delivered said cocaine to confidential informant.

Transcript at 15-16.

DISCUSSION

I.

The first issue is whether the evidence is sufficient to sustain Long's conviction for conspiracy to deal in cocaine as a class A felony. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995), reh'g denied. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. Id. We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id.

Long asserts that the State failed to introduce evidence to establish that he was part of an agreement with Woodruff, Williams, and Brownlow to sell cocaine to the C.I. Long argues that he was charged with conspiring with Woodruff, Williams, and Brownlow and that therefore it would be insufficient to show that Long conspired with only Williams or with only Williams and Brownlow. Long argues that Woodruff was the only person who offered testimony as to what transpired in the house and that Woodruff did not testify whether there was an indication that Long was to receive any money for the sale of the cocaine. Long asserts that, "[a]lthough Woodruff testified Williams had an agreement with Woodruff [], this evidence does not show that Long deliberately entered into any agreement with Woodruff, much less an agreement with Woodruff to sell cocaine to the CI." Appellant's Brief at 12-13. Long further argues that Woodruff's testimony may show Long had a pre-existing relationship with Brownlow or Williams,

6

but that relationship or association standing alone is insufficient to establish a conspiracy and that Long's presence at Woodruff's house is similarly insufficient to establish he agreed with the other men to sell cocaine. Long also argues that the evidence that he dictated the price of the cocaine does not establish that he agreed with anyone to sell cocaine to the C.I. and that "the evidence suggests Long may have known of a conspiracy; the evidence does not however, establish that Long was part of the conspiracy." Id. at 14.

The State maintains that Long, Woodruff, Williams, and Brownlow were intent on selling a kilogram of cocaine to the buyer arranged by Woodruff and that they all worked together to accomplish this goal. The State argues that Long was not previously known by Woodruff, that Long would not have known Woodruff except through Williams, that Long would not have known where to bring the cocaine except through Williams's directions, and that Brownlow would not have known anything about Woodruff except through Long.

The offense of conspiracy is governed by Ind. Code § 35-41-5-2, which provided in part at the time of the offense that "[a] person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony," that "[a] conspiracy to commit a felony is a felony of the same class as the underlying felony," and "[t]he state must allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement." The State is not required to prove the existence of a formal express agreement to establish a defendant

7

agreed to deal in cocaine. Simmons v. State, 828 N.E.2d 449, 454 (Ind. Ct. App. 2005). The requisite agreement can be inferred from circumstantial evidence, including overt acts of the parties in furtherance of the criminal act. Wallace v. State, 722 N.E.2d 910, 913 (Ind. Ct. App. 2000). Here, the underlying felony is dealing in cocaine as a class A felony. The offense of dealing in cocaine is governed by Ind. Code § 35-48-4-1, which at the time of the offense provided in part that "[a] person who: [1] knowingly or intentionally . . . [2] delivers . . . [3] cocaine . . . commits dealing in cocaine . . . a Class B felony . . . ," and that "[t]he offense is a Class A felony if . . . the amount of the drug involved weighs three (3) grams or more . . . ." Thus, to convict Long of conspiracy to deal in cocaine as a class A felony, the State needed to prove that Long intended to commit the felony, agreed with another person to commit the felony, and that Long or one of the persons with whom he agreed performed an overt act in furtherance of the agreement.

Long does not challenge the evidence that Williams carried the bag containing the kilogram of cocaine to the C.I.'s vehicle in order to sell the cocaine to the C.I. or argue that Williams's actions did not constitute an overt act. In support of the element of an agreement to which Long was a party, the evidence most favorable to the conviction is that the C.I. indicated to Woodruff that he wanted a kilogram of cocaine and Woodruff called Williams to ask if Williams could obtain the cocaine. Williams said that his cousin, Long, could obtain the cocaine. Woodruff testified that he and Williams were at Woodruff's house, that Long and Brownlow arrived at the house, and that Brownlow

8

placed the bag of cocaine on the kitchen table. Woodruff testified that he stated that the buyer would want to see and sample it before any money was transferred and that Long opened the bag displaying the brick of cocaine. Woodruff testified that he handed a utility knife to Long and that Long cut the wrapper off of the cocaine. Woodruff testified that he, Williams, Long, and Brownlow stood around the kitchen table. Woodruff indicated that no one appeared surprised or asked "what's that" when the cocaine was taken out of the bag. Transcript at 95. Woodruff further testified that Williams and Long negotiated the price of the cocaine and that he was present and in the room during their conversation. When asked "was there any talk or indication that Marlan Long was going to receive any part of that money," Woodruff testified "[h]e was the one dictating the price of the kilo." Id. at 115. When asked "[y]ou indicated that [Long] decided the price," Woodruff stated "[y]es." Id. at 116. When asked what Williams was doing, Woodruff testified "[h]e was . . . wantin' to know what the selling price was so he can tack on, like I was, our fee." Id. When asked, "[s]o who did [] Williams ask what the price was going to be," Woodruff answered "[t]he defendant." Id. Woodruff later testified: "They set the price. They put the base price on it. And we tacked on what we wanted." Id. at 121.

Based upon our review of the record, we conclude that the evidence was sufficient for a reasonable jury to find that Long was a party to an agreement to deliver cocaine over three grams to the C.I. and to conclude that Long committed conspiracy to deal in cocaine as a class A felony. See McCollum v. State, 582 N.E.2d 804, 816 (Ind. 1991)

9

(holding the evidence was sufficient to show the defendant had an agreement with another person to sell cocaine to a third person), reh'g denied; Kirk v. State, 974 N.E.2d 1059, 1076 (Ind. Ct. App. 2012) (holding the evidence was sufficient to sustain the defendant's conviction for conspiracy to commit dealing in cocaine), trans. denied.

II.

The next issue is whether the trial court abused its discretion in denying Long's motion for mistrial. "The granting of a mistrial lies within the sound discretion of the trial court, and we reverse only when an abuse of discretion is clearly shown." Davis v. State, 770 N.E.2d 319, 325 (Ind. 2002), reh'g denied. "The remedy of mistrial is 'extreme,' Warren v. State, 757 N.E.2d 995, 998-999 (Ind. 2001), strong medicine that should be prescribed only when 'no other action can be expected to remedy the situation' at the trial level, Gambill v. State, 436 N.E.2d 301, 304 (Ind. 1982)." Lucio v. State, 907 N.E.2d 1008, 1010-1011 (Ind. 2009). We afford the trial court such deference on appeal because the trial court is in the best position to evaluate the relevant circumstances of an event and its impact on the jury. Alvies v. State, 795 N.E.2d 493, 506 (Ind. Ct. App. 2003), trans. denied. To prevail on appeal from the denial of a motion for a mistrial, the appellant must demonstrate the statement or conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. Id. We determine the gravity of the peril based upon the probable persuasive effect of the misconduct on the jury's decision rather than upon the degree of impropriety of the conduct. Id.

At trial, during the cross-examination of Officer Dale Young, the following exchange occurred between Long's counsel and Officer Young:

Q. Do you know if any other contraband was found in the home?

A. Yes.

Q. Okay, there was?

A. There were other pieces of evidence involve [sic] in the case. If are [sic] saying was there small amount in the bedroom or something like that, I don't remember because I didn't process that. I processed the people. That's the best way to put it.

Q. Okay, so being involve din [sic] this investigation you don't know whether or not cocaine was found in other portions of this home?

A. No because I was pulling stuff out of people's pockets and processing that.

Q. Um hm. Okay And you never found any cocaine on Marlan Long is that correct?

A. Not part of this investigation.

Q. And you never - - not part of this investigation. Have you ever found any cocaine on Marlan Long?

A. I was a district officer. So I knew Marlan from before this investigation.

Q. Okay. And so you knew him - - he's never been - - you knew of Marlan Long is that correct?

A. Yes.

Q. You were involved in this investigation is that correct?

A. Yes, as I testified.

11

Q. Right. Right and so with respect to this investigation, the target of this investigation was Vernon Woodruff is that correct?

A. Say that again?

Q. Vernon Woodruff.

A. If you are describing him as the man with the braids, that actually went out to the blue SUV in the front, yes he was the person hat [sic] handed the cocaine. Yes.

Q. So that was Vernon Woodruff?

A. That's the person that I believe you are trying to - - I know Marlan from the Camaro from previous investigations I've done.

Transcript at 248-250. Following Officer Young's testimony, Long moved for a mistrial based on Officer Young's response.[2] The State argued that Officer Young did not answer that he made any prior arrests of Long or found cocaine on Long in the past and that Officer Young "answered truthfully in a way that didn't imply any criminal history or arrest of Marlan Long in the past." Id. at 260. The court found that Officer Young's response was not a damaging statement and that Officer Young's answer did not imply there were other investigations. The court offered to admonish the jury, and Long's counsel indicated the defense did not desire any admonishment.

On appeal, Long argues that evidence of his prior wrongs or acts was inadmissible under Ind. Evidence Rule 404(b), that Officer Young on two occasions "made it perfectly clear to the jury that Officer Young was familiar with Long through Officer Young's

---

[2] Defense counsel stated it heard Officer Young's response as "Not as part of this investigation." Transcript at 258. The prosecutor stated that she heard the response as "Not apart of this investigation." Id. at 259. The court indicated that Officer Young's response was "not a part of this investigation." Id.

investigations undertaken as a narcotics officer," and that "[t]he unescapable message that the jury received was that Long had been involved in drugs on prior occasions and was on the radar of Indianapolis narcotics officers." Appellant's Brief at 18-19. Long contends that Officer Young's testimony placed him in grave peril, that "Officer Young, for no good reason, interjected Long's prior involvement with narcotics into the case," that the improper character evidence was related to the charged offense, and that the State's case against Long "was far from strong" and "was largely circumstantial." Id. at 21-23.

The State argues that Long waived his claim regarding the denial of his mistrial motion because he refused the offer of an admonishment. The State maintains there was no misconduct by Officer Young, that Long was not placed in grave peril, that Officer Young's testimony did not implicate Long in any prior drug dealing activity, and that Officer Young could have been referring to Long as a witness or someone that he merely ran across during an investigation. The State further argues, even if Officer Young's testimony constituted a violation of Rule 404(b), Long is not entitled to reversal because any error was invited by Long as his counsel elicited Officer Young's testimony.

In his reply brief, Long argues that this court has specifically rejected the argument that a party waives appellate review by failing to request an admonishment in addition to moving for a mistrial. Long also argues it would be particularly appropriate to reject the State's waiver argument here as the trial court recognized that an admonishment would likely make matters worse. Long maintains that "[t]he obvious and

13

impermissible message Officer Young delivered to the jury was that Long had been involved with narcotics on prior unrelated occasions." Appellant's Reply Brief at 13. Long also argues that he did not invite impermissible testimony, that the fact Officer Young offered the testimony on cross-examination has no bearing on whether he was prejudiced, and that Officer Young's answers were not responsive.

Ind. Evidence Rule 404(b) provides in part that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 404(b) is meant to exclude evidence "only when it is introduced to prove the 'forbidden inference' of demonstrating the defendant's propensity to commit the charged crime." Southern v. State, 878 N.E.2d 315, 321 (Ind. Ct. App. 2007), trans. denied. When Long's counsel asked Officer Young on cross-examination if he had ever found any cocaine on Long, Officer Young testified: "Not part of this investigation." Transcript at 249. When asked if he ever found cocaine on Long, Officer Young testified "I was a district officer. So I knew [Long] from before this investigation." Id. Shortly thereafter, when Long's counsel asked whether Woodruff was the target of this investigation, Officer Young replied affirmatively and stated that he knew Long "from previous investigations [he had] done." Id. at 250. The State presented evidence, as stated in Part I above, of Long's agreement with Woodruff, Williams, and Brownlow to sell cocaine to the C.I. Officer Young did not make direct statements about Long's criminal history or his knowledge of any previous drug- or cocaine-related conduct by Long. While Officer Young's

14

testimony could have created an inference that Long had been the subject of a law enforcement investigation for prior bad conduct, such testimony does not violate Evidence Rule 404(b). See Dixson v. State, 865 N.E.2d 704, 712 (Ind. Ct. App. 2007) (holding that "evidence which creates a mere inference of prior bad conduct does not fall within the purview of Evidence Rule 404(b)") (citing Allen v. State, 743 N.E.2d 1222, 1232 (Ind. Ct. App. 2001) (holding that testimony which might have created an inference that defendant had a prior criminal history did not run afoul of Evidence Rule 404(b)), reh'g denied, trans. denied; Haak v. State, 695 N.E.2d 944, 947 (Ind. 1998) (holding that, even if witness's testimony that she was afraid of the defendant could have raised an inference of prior bad acts by defendant, such an inference did not violate Evidence Rule 404(b) because the witness did not testify as to any conduct by the defendant)), trans. denied. Moreover, we have stated that "[t]he question we must ask is whether, absent the improper comment, it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty." See Greenlee v. State, 655 N.E.2d 488, 490 (Ind. 1995) (citing Burdine v. State, 477 N.E.2d 544, 546 (Ind. 1985) (citing United States v. Hasting, 461 U.S. 499, 510, 103 S. Ct. 1974, 1981 (1983))). In this case, we conclude that, absent the responses of Officer Young to which Long objected, it is clear that the jury would have returned a verdict of guilty on the conspiracy charge in light of the evidence and testimony presented by the State. While Officer Young indicated he did not find cocaine on Long as part of this investigation and that he knew Long from previous investigations, other evidence including the testimony of Woodruff as set forth in Part I above linked

Long to the conspiracy. See id. (observing that, in light of the trial testimony against Greenlee from an eyewitness, it is likely the jury would have returned a verdict of guilty even without the improper testimony" and holding that "[g]iven the strong testimony against Greenlee and the absence of any evidence in the record of a deliberate attempt to inject Officer Underwood's testimony into trial, the trial court acted within its discretion to deny Greenlee's motion for a mistrial"). See also Reese v. State, 452 N.E.2d 936, 939-940 (Ind. 1983) (noting that the defendant moved for a mistrial when a witness, Parker, implied she had passed a polygraph test, observing that the answer given by Parker was not deliberately induced, noting that "[t]he gauge [] is not exclusively the way in which the testimony entered the case [] but rather, the probable impact of the irregularity upon the verdict is of prime importance," finding that, while the defendant argued the conspiracy to commit arson could be inferred only from the testimony of Parker, there had been prior testimony of two other witnesses which had linked the defendant to the crime and from which a jury could have inferred a conspiracy, and holding that the court did not abuse its discretion in denying the defendant's motion for mistrial), reh'g denied.

Based upon the record, we conclude that Long has not established that Officer Young's responses during cross-examination were so prejudicial and inflammatory in light of all of the evidence presented at trial that Long was placed in a position of grave peril to which he should not have been subjected or that the jury's decision was affected by the responses. We cannot say the trial court abused its discretion in not declaring a mistrial.

16

The next issue is whether the court abused its discretion in admitting certain evidence regarding the seized cocaine. Generally, we review the trial court's ruling on the admission of evidence for an abuse of discretion. Noojin v. State, 730 N.E.2d 672, 676 (Ind. 2000). We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. Joyner v. State, 678 N.E.2d 386, 390 (Ind. 1997), reh'g denied. Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. Fox v. State, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), reh'g denied, trans. denied.

Long argues that the court abused its discretion in admitting evidence pertaining to cocaine that the State had destroyed. Long specifically points to Ind. Code § 35-33-5-5 and argues that the cocaine was wrongfully destroyed and that the destruction of the cocaine violated his due process rights. He contends "[i]t is possible that, had [he] been able to examine and test the substance, the results could have been different than the one and only test results upon which the State necessarily relied." Appellant's Brief at 30. Long then asserts that "[n]othing in the record shows that the State informed Long or his counsel that the evidence had been destroyed until the eve of trial." Id. at 30.

The State maintains that, while Long objected to the admission of any cocaine evidence at the beginning of trial, he made no objections to the testimony regarding the cocaine during the trial and thus waived any argument and invited any error related to the admission of the cocaine evidence. The State further argues that the statute to which

Long points is applicable to the manufacturing of methamphetamine or other dangerous substances and not to dealing in cocaine and that the statute did not require suppression of the cocaine evidence. The State also argues that Long had ample opportunity to have the cocaine independently tested prior to the time it was accidentally destroyed and that he was not denied due process. In his reply brief, Long argues that he preserved the issue for appeal when he voiced his objection at the beginning of trial and that additional objections in front of the jury would have served no purpose and would have caused him to lose credibility.

At the beginning of trial, Long objected to "any admission . . . of evidence pertaining to the cocaine since the evidence was itself in fact physically destroyed" and cited Ind. Code § 35-33-5-5. Transcript at 5. The State responded that the due process rights of Long had not been violated, that he had access to observe the cocaine at the previous trial, and that his previous attorney deposed the chemist about her analysis of the cocaine. The court found that the statute cited by Long did not apply and overruled his objection. The State later presented testimony that the cocaine recovered by law enforcement was tested within twenty-four hours of its seizure and that the cocaine and the bag and wrapper in which it was contained were accidentally destroyed in November 2013. The State also introduced photographic evidence of the cocaine and the bag and wrapper in which it was contained, the testimony of the forensic chemist who analyzed the cocaine and determined that its weight was one kilogram, and the laboratory cocaine analysis report dated August 25, 2011. Long did not object to the admission of any of

this evidence at trial. Long's counsel specifically stated "[n]o objection" to the admission of the State's photographic evidence and the laboratory analysis report. See Transcript at 43, 92, 284.

"In order to preserve a claim of trial court error in the admission or exclusion of evidence, it is necessary at trial to state the objection together with the specific ground or grounds therefor at the time the evidence is first offered." Mullins v. State, 646 N.E.2d 40, 44 (Ind. 1995) (citations omitted). "Failure to state the specific basis for objection waives the issue on appeal." Id. See also Lewis v. State, 755 N.E.2d 1116, 1122 (Ind. Ct. App. 2001) ("Failure to make a contemporaneous objection to the admission of evidence at trial results in waiver of the error upon appeal."). Long failed to object to the admission of the evidence regarding the recovered cocaine introduced by the State during his trial, including the photographs of the cocaine, the testimony regarding the testing of the cocaine, and the copy of the lab analysis report, and thus his arguments related to the admission of this testimony and evidence are waived. Long does not allege fundamental error in his briefs and accordingly has waived that claim as well.

We address Long's argument that evidence of the cocaine was inadmissible because the actual cocaine was accidentally destroyed before his second trial to the extent he presented an argument on that basis at the beginning of trial. Ind. Code § 35-33-5-5 governs the disposition of property held as evidence, and subsection (c) of the statute provides in part that property which is unlawful to possess shall be destroyed by the law

19

enforcement agency sixty days after final disposition of the cause.[3] While the cocaine

seized by law enforcement was accidentally destroyed in November 2013 prior to Long's

second trial, we cannot say that reversal on this basis is warranted. We first observe that

Long was charged with and convicted of conspiracy to deal in cocaine and was not

convicted of possession of cocaine. Moreover, when determining whether a defendant's

due process rights have been violated by the State's failure to preserve evidence, we first

decide whether the evidence is potentially useful evidence or materially exculpatory

evidence. State v. Durrett, 923 N.E.2d 449, 453 (Ind. Ct. App. 2010) (citations omitted).

Long does not assert the cocaine was materially exculpatory but argues that it was

potentially useful and that, had he tested the substance, the results could have been

different than the test results upon which the State relied. Evidence is merely potentially

useful if no more can be said than that it could have been subjected to tests, the results of

which might have exonerated the defendant. Id. (citations omitted). The State's failure

to preserve potentially useful evidence does not constitute a violation of due process

rights unless the defendant shows bad faith on the part of law enforcement. Id. The State

here presented evidence that the cocaine retrieved from Long and his co-conspirators had

been tested within twenty-four hours of its seizure and that the amount of cocaine

---

[3] Ind. Code § 35-33-5-5(e) provides that a law enforcement agency may destroy "chemicals, controlled substances, or chemically contaminated equipment (including drug paraphernalia as described in IC 35-48-4-8.5) associated with the illegal manufacture of drugs or controlled substances" if the agency "preserves a sufficient quantity of the . . . controlled substances . . . to demonstrate that the . . . controlled substances . . . [were] associated with the illegal manufacture of drugs or controlled substances," the agency "takes photographs of the illegal drug manufacturing site," and the agency "completes a chemical inventory report." Ind. Code § 35-33-5-5(e) relates to the destruction of evidence "associated with the illegal manufacture" of controlled substances and thus does not govern the destruction of the cocaine in this case.

recovered weighed over one kilogram. The State further introduced, without objection, photographs of the brick of cocaine and the bag and wrapper in which it was contained. The State also presented, without objection, the testimony of the forensic chemist who analyzed the cocaine and determined its weight to be over a kilogram and the laboratory examination report dated August 25, 2011. Long had sufficient opportunity prior to November 2013 to independently test the cocaine if he desired, and he has made no showing of bad faith on the part of law enforcement. See id. (noting the failure to preserve potentially useful evidence does not constitute a violation of due process rights unless the defendant shows bad faith on the part of law enforcement). In addition, Long argues as mentioned above that he was not informed the cocaine had been destroyed until the eve of trial, which further supports the conclusion that he did not attempt to have the cocaine independently tested and that he suffered no prejudice due to its accidental destruction. Long has not demonstrated that he did not receive due process or is entitled to reversal of his conviction for conspiracy to commit dealing in cocaine due to the accidental destruction of the cocaine.

IV.

The next issue is whether Long's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant

to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Long argues the drug deal did not involve violence or the threat of violence and that he was not in possession of a weapon when he was arrested. He argues that, while he has a criminal history, the court recognized his felony convictions were not "the worst felony convictions in the world." Appellant's Brief at 32 (citing Transcript at 414). Long also argues that, while he was awaiting trial, he was gainfully employed, attended school, excelled at his job, and that allowing him to serve all or part of his sentence through community corrections would allow him to continue to support his three children and fiancée's child.

The State argues the nature of the offense is egregious based on the amount of cocaine that Long conspired to deal and that several people were involved in his conspiracy. The State further argues that Long's character demonstrates his sentence is not inappropriate, that his criminal behavior continued unabated from 1997 to the present crime, that as an adult Long accumulated thirty-five arrests and six felony convictions, and that he had numerous probation violations, many related to substance abuse. The State contends there is nothing about the nature of the offense or Long's character that suggests the sentence imposed is inappropriate, either in its length or placement, other than that it is too lenient.

Our review of the nature of the offense reveals that Long entered an agreement with Brownlow, Woodruff, and Williams to sell a kilogram of cocaine. Woodruff

indicated that the transaction was "a thirty to thirty-five thousand dollar transaction." Transcript at 120. Our review of the character of the offender reveals that, according to the presentence investigation report (the "PSI"), Long was born December 12, 1982, he has three dependents and is ordered to pay child support, and that his first arrest was at age fourteen. The PSI indicates that Long's criminal history includes juvenile adjudications for carrying a handgun without a license in 1997 and fleeing law enforcement in 1998, and that his adult criminal history includes possession of marijuana, operating a vehicle having never received a license, and resisting law enforcement as misdemeanors in 2000; resisting law enforcement as a misdemeanor in 2001; possession of marijuana as a misdemeanor, operating a vehicle having never received a license as a misdemeanor, possession of cocaine or schedule I or II drug as a class D felony, and driving while license suspended as a misdemeanor in 2002; carrying a handgun without a license as a class C felony and resisting law enforcement as a misdemeanor in 2003; operating vehicle while intoxicated as a misdemeanor in 2006; disorderly conduct and driving while license suspended as misdemeanors in 2007; criminal confinement as a class D felony, battery as a class A misdemeanor, operating a vehicle while suspended as a habitual traffic violator as a class D felony, and possession of a controlled substance as a class D felony in 2008; resisting law enforcement as a misdemeanor in 2009; operating a vehicle while suspended as a habitual traffic violator as a class D felony in 2011; and operating motor vehicle after lifetime forfeiture of driving privileges as a class C felony in 2013. The PSI further shows that Long's probation was revoked a number of times.

The PSI states that Long was employed doing interior construction from December 2013 through January 2014 and that he was previously employed as a traffic guard and transportation navigator in 2013. Long reported that he smokes marijuana once weekly and reported his last use on January 14, 2014. The PSI also provides that the results of the Indiana Risk Assessment System show that his overall risk assessment score places him in the high risk to reoffend category, with high scores in the domains of criminal history and substance abuse.

After due consideration, we conclude that Long has not sustained his burden of establishing that his advisory sentence of thirty years is inappropriate in light of the nature of the offense and his character.

## CONCLUSION

For the foregoing reasons, we affirm Long's conviction and sentence.

Affirmed.

BAILEY, J., and ROBB, J., concur.