## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 08 2020, 8:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Sean P. Hilgendorf
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brian Demarko Walton, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 8, 2020 <br><br> Court of Appeals Case No. <br> 19A-CR-2529 <br><br> Appeal from the St. Joseph <br> Superior Court <br><br> The Honorable Jane Woodward <br> Miller, Judge <br><br> Trial Court Cause No. <br> 71D01-1809-F2-18 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Brian Walton (Walton), appeals his conviction for conspiracy to deal in a narcotic drug, a Level 2 felony, Ind. Code §§ 35-48-4-1(a)(2), -(e)(2); 35-41-5-2.

We affirm.

# ISSUE

Walton presents the court with one issue, which we restate as: Whether the State proved beyond a reasonable doubt that he conspired to deal in a narcotic drug.

# FACTS AND PROCEDURAL HISTORY

In August of 2018, Walton was dealing heroin and fentanyl in South Bend, Indiana. Walton spent time almost every day at his friend Hakim Smith's (Smith) apartment at the Laurelwood Apartment complex in South Bend. The South Bend Police Department (SBPD) became aware of the possibility that Walton was dealing illegal substances when he began using a telephone number that had been previously used by a drug distribution ring already known to police. The SBPD began to investigate Walton and monitor his activities.

On August 23, 2018, the SBPD made a controlled buy of .38 grams of a heroin/fentanyl mix from Walton. After the controlled buy, Walton drove to Smith's apartment complex, parked in front of the entrance to Smith's apartment, and entered the building. Subsequently, the SBPD acquired a so-

called "ping warrant" that permitted them to track the movement of Walton's cell phone.

[6]     On August 29, 2018, the SBPD made another controlled buy of .37 grams of a heroin/fentanyl mixture from Walton. On September 12, 2018, the SBPD made a third controlled buy of .30 grams of fentanyl from Walton. Through a social media platform, the SBPD became aware that Walton planned to travel to Chicago to purchase more illegal substances to sell in South Bend. On September 13, 2018, Walton's cell phone was tracked making a round trip from South Bend to Chicago, eventually returning to Smith's apartment.

[7]     On September 13, 2018, officers of the SBPD Drug Investigations Unit procured and served a search warrant on Smith's home. On the kitchen counter of Smith's small apartment was a plate containing 34.69 grams of fentanyl and a bag containing several smaller bags of fentanyl amounting to 9.06 grams. Razor blades, a scale, small ziplock bags, baggies, sleeping pills commonly mixed with illegal substances, a pill grinder, and latex gloves were also found in the kitchen. When officers entered Smith's apartment, Walton was in the living room, three to four steps away from the fentanyl in the kitchen. Smith was coming out of a back bedroom when officers encountered him. A cell phone found on Walton had the number used to arrange the controlled buys that had taken place on August 23, August 29, and September 12, 2018.

[8]    After the search warrant was served, Walton was taken into custody and was questioned by officers in a video-recorded interview. Walton told the officers that Smith was the only person he knew in South Bend. Walton initially denied knowing that Smith was dealing drugs but later in the interview told the officers that Smith would call someone in Chicago and then go up there to get drugs. When asked "when you go up to Chicago and pick up that dope what's the most dope you've seen at that guy's house" Walton responded "I only went up there with him a couple of times" and "it was never in a house." (Exh. 30, 14:23-14:45). Walton admitted that he and Smith had driven to Chicago earlier in the day and returned immediately to South Bend. An officer asked Walton, "So you didn't go with him when he picked up his dope?" Walton responded, "No, no! What I'm saying was when I was with him he gotten his stuff he dropped me off at my house…" (Exh. 30, 17:02-17:30). Walton and the officers discussed the possibility of him making controlled buys for law enforcement from the Chicago drug source. Walton informed the officers, "You gotta understand. I came in on something that was already going. They had set rates, set pays . . ." (Exh. 30, 29:57-30:09). Walton told the officers that he had learned how the existing drug operation worked from seeing other people do it and that he "just went with the rotation, which was foolish of me, but I did it." (Exh. 30, 30:36-53). Walton never told the officers that he had procured the drugs he sold during the controlled buys from a supplier in South Bend named Doc.

[9]     On September 19, 2018, the State filed an Information, charging Walton with three Counts of Level 5 felony dealing in a narcotic drug, one Count of Level 4 felony dealing in a narcotic drug, one Count of Level 2 felony dealing in a narcotic drug, and one Count of Level 2 felony conspiracy to commit dealing in a narcotic drug. On June 18, 2019, the trial court convened Walton's three-day jury trial. Prior to the commencement of trial, the State dismissed the Level 4 felony dealing charge. Officers of the SBPD Drug Investigations Unit testified that the amounts of fentanyl found in Smith's apartment were not amounts typically possessed by users and that the razor blades, the scale, small ziplock bags and baggies, sleeping pills, pill grinder, and latex gloves are items used to measure and package drugs for sale. Walton testified on his own behalf. Walton denied that he had driven to Chicago on September 13, 2018, with Smith or that he had bought drugs in Chicago with Smith. Walton stated that he had procured his heroin and fentanyl from a source in South Bend who went by the name Doc. Walton acknowledged saying in this police interview that he had joined a drug operation that was already set up, but he denied that Smith was part of that operation.

[10]    The jury found Walton guilty of the three Level 5 felony dealing charges and the conspiracy charge but not-guilty of the Level 2 felony dealing charge. On July 18, 2019, the trial court sentenced Walton to three years for each of the Level 5 felony dealing convictions and to seventeen and one-half years for the conspiracy to deal conviction, all to be served concurrently.

[11]    Walton now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

Walton challenges the evidence supporting his conviction for conspiracy to deal in a narcotic drug. It is well-established that when we review the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is not our role as an appellate court to assess witness credibility or to weigh the evidence. *Id*. We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id*.

## II. *Sufficiency of the Evidence*

The State alleged that Walton committed conspiracy to deal in a narcotic drug as follows:

> On or about September 13, 2018 in St. Joseph County, State of Indiana, [Walton], with the intent to commit Dealing in a Narcotic Drug, did agree with one or more other persons, including [Smith], to commit the crime of Dealing in a Narcotic Drug in an amount of at least ten (10) grams, and [Walton] or one of those other persons did commit an overt act in furtherance of the agreement, to wit: acquired possession of a narcotic drug.

(Appellant's App. Vol. II, p. 167). In order to procure a conviction for a conspiracy crime, the State must allege and prove that either the person, or the person with whom he agreed to commit a felony, performed an overt act in furtherance of the agreement. I.C. § 35-41-5-2(a)-(b). Thus, in order to prove

the offense as charged, the State was required to prove that Walton agreed with one or more persons, including Smith, to deal a narcotic drug and that Walton or one of those other persons acquired possession of a narcotic drug in furtherance of that agreement.

[14] Walton argues that the evidence did not support the existence of a conspiracy to deal narcotics because the State merely produced evidence that he was associated with Smith and not that they had an agreement to deal in narcotics, as alleged in the Information. In order to make its case for a conspiracy, the State was not required to prove the existence of a formal, explicit agreement. *Wallace v. State*, 722 N.E.2d 910, 913 (Ind. Ct. App. 2000). "The agreement can be inferred from circumstantial evidence, including overt acts of the parties in furtherance of the criminal act." *Id*. The evidence supports a conspiracy conviction if it shows that the minds of the parties met "understandingly to bring about an intelligent and deliberate agreement to commit the offense." *Simmons v. State*, 828 N.E.2d 449, 454 (Ind. Ct. App. 2005) (quotation omitted). Like the other elements of a conspiracy, the State may prove the existence of an agreement with direct or circumstantial evidence. *Id*. However, evidence of a mere association with a co-conspirator will not support the existence of an agreement and a conviction for conspiracy. *Id*.

[15] Here, the evidence showed much more than a mere association amongst Walton, Smith, and their co-conspirators. Walton and Smith had grown up together, were together almost every day, and were both dealing drugs in South Bend. Walton was using the same phone number law enforcement had

previously linked to a drug distribution network, and he admitted in his police interview that he had joined up with an ongoing, established drug dealing operation. Walton, who law enforcement knew from social media was planning to go to Chicago to purchase drugs, also admitted that he and Smith had driven to Chicago earlier in the day on September 13, 2018, so that Smith could purchase drugs, which Walton stated he had done with Smith a "couple of times" in the past. (Exh. 30, 14:23-14:45). Although Walton denied at trial that Smith was part of the drug-dealing operation Walton had joined, in its role as fact-finder, the jury was free to reject that denial. This is especially true in light of Walton's alternate explanation for the source of the drugs he dealt during the controlled buys, a supplier named Doc in South Bend who Walton had never mentioned during his police interview. Evidence that Walton had joined an existing drug dealing operation that included Smith and that he and Smith went to Chicago on September 13, 2018, to purchase drugs supported the jury's reasonable inference that Walton was part of an on-going agreement among the members of the drug-dealing operation and Smith to deal drugs and that he and Smith performed an overt act, acquiring possession of drugs in Chicago, in furtherance of that agreement.

[16] Walton also argues that the State did not prove that he constructively possessed the fentanyl found during the execution of the search warrant on September 13, 2018. This argument misses the mark because the overt act the State charged in the conspiracy Count was not Walton's possession of the fentanyl but his act of acquiring possession of drugs, which we have already determined was

supported by the evidence produced at trial that he and Smith purchased drugs in Chicago on September 13, 2018. Therefore, we do not address Walton's constructive possession argument further.

# CONCLUSION

Based on the foregoing, we conclude that the State proved beyond a reasonable doubt that Walton agreed with his co-conspirators to deal in narcotics and that he performed an overt act in furtherance of that agreement.

Affirmed.

Mathias, J. and Tavitas, J. concur